**STATE of Missouri, Respondent,**

v.

**Telma CHRISTIE, Appellant.**

**No. WD 30903.**

Missouri Court of Appeals,
Western District.

Sept. 2, 1980.

John Warren, St. Joseph, for appellant.

John Ashcroft, Atty. Gen., Earl W. Brown, III, Asst. Atty. Gen., Kansas City, for respondent.

Before CLARK, P. J., and DIXON and SOMERVILLE, JJ.

SOMERVILLE, Judge.

Defendant was charged with felonious assault without malice aforethought. Section 559.190, RSMo 1969 (the offense having occurred on August 20, 1978). The defendant and the victim were both females. A brawl erupted between them which resulted in the end of the victim's nose being bitten off by the defendant. A jury found defendant guilty as charged and her punishment was fixed at a fine of One Thousand Dollars and confinement in the Buchanan County Jail for a term of one year.

Defendant raises four points on appeal: (1) the trial court erred in denying her motion for judgment of acquittal at the close of all the evidence because uncontradicted and undisputed evidence offered by the state, as a matter of law, conclusively established that defendant acted in self–defense; (2) the prosecuting attorney improperly argued during closing argument that defendant "bit through the cartilage" of the victim's nose absent any evidence to support such an argument; (3) the trial court erred in refusing to give Instruction "A" tendered by defendant on self–defense because it included while the instruction given by the trial court omitted a paragraph appertaining to the victim's "reputa-

tion" as a person possessed of a violent or turbulent disposition; and (4) the trial court erred in permitting the prosecuting attorney to inquire of the defendant on cross–examination about her recollection of prior fights in which she had been involved.

A review of the evidence in conjunction with defendant's first point will be prefaced by taking note of certain applicable legal principles.

Broadly speaking, certain factual elements are necessary to establish self–defense. Substantially paraphrased, one who relies upon self–defense (a) must not have provoked or been the aggressor in the assault, (b) must believe that he is faced with the danger of having death, great bodily harm or a felony inflicted upon him, (c) must have reasonable grounds for such belief, (d) must not use more force than reasonably appears necessary to him under the circumstances to resist the danger with which he reasonably believes he is confronted, and (e) before resorting to extreme measures he must do everything in his power consistent with his own safety to otherwise avoid the danger, and must retreat, if retreat is practicable. *State v. Jackson*, 522 S.W.2d 317, 319 (Mo.App.1975); *State v. Davis*, 572 S.W.2d 243, 246 (Mo.App.1978), and cases therein cited.[1] Whether an accused acted in self–defense, where the evidence is conflicting or of such a character that different inferences might reasonably be drawn therefrom, is ordinarily a question of fact for the jury. *State v. Hammonds*, 459 S.W.2d 365, 368 (Mo.1970); *State v. Cook*, 428 S.W.2d 728, 731 (Mo.1968); and *State v. Jackson, supra.* Acquittal of an accused by reason of self–defense as a matter of law, so as to bar submission of the charged offense to the jury, is relegated to those exceptionally rare instances where all the undisputed and uncontradicted evidence clearly establishes self–defense. *State v. Rash*, 359 Mo. 215, 217, 221 S.W.2d 124, 124 (1949); and *State v. Davis, supra.*

A concise review of the state's evidence, in a frame of reference drawn by the above

---

1. There is no legal difference between homicide and assault cases as to whether force was justified so as to require acquittal. *State v. Spencer*, 307 S.W.2d 440, 443 (Mo.1957).

enumerated principles, will now be undertaken. On the evening of August 20, 1978, the victim, defendant and her husband, and several mutual acquaintances were drinking at a bar in St. Joseph, Missouri. When the bar closed, the group proceeded to the home of one of the mutual acquaintances and continued their drinking. While there, an atmosphere of animosity and hostility developed between the victim and the defendant due to some disparging remarks made about the size of the victim's bosom, some vile name calling, and a "pass" made at the victim by defendant's husband. The female "boiling point" was finally reached, and the victim invited the defendant outside the house for a "fight" and pulled the defendant by the arm to assure compliance. The victim and the defendant were pushing and pulling each other as they left the house. Once outside, the victim pushed the defendant off of the porch of the house and the two then proceeded to scuffle in the yard. They were separated before either harmed the other and defendant went back into the house and the victim remained outside for a short time. The victim then went back into the house at which time she overheard the defendant remark, "I'll get that f____ b____". This reignited the volatile situation between the two and the victim grabbed the defendant to take her outside again. Some of those present separated the antagonists at that point, and, when the victim released the defendant, the latter's husband proceeded to restrain the victim and the defendant then shoved the victim. A melee then broke loose, and, while the victim was being restrained by the defendant's husband, the defendant bit the victim on the hand, then on the arm, and then on the nose. While defendant's teeth were "locked" on the victim's nose, defendant's husband pushed the two combatants onto the floor where the defendant ended up on bottom and the victim ended up on top. While both were in this prone position the victim, to no avail, begged defendant to quit biting her nose. Defendant continued biting the victim's nose with relentless tenacity. The victim then struck the defendant on the side of the head with her fist in an attempt to free herself but the defendant continued to bite the victim's nose and the pain occasioned thereby discouraged the victim from taking any further measures to free herself from defendant's unique viselike hold. The defendant continued biting the victim's nose until someone yelled that the police were coming. The end of the victim's nose was missing when defendant finally let go.

■ After carefully evaluating this evidence in light of the principles garnered from the various cases heretofore mentioned, this court is constrained to hold that the state's evidence did not establish, as a matter of law, that defendant acted in self-defense, and the trial court properly responded to the evidence by submitting the issue of self-defense to the jury by way of appropriate instructions. Several cogent reasons exist to buttress this conclusion. For example, under the evidence it could be reasonably inferred that defendant had an opportunity to retreat and avoid the final confrontation which ended in severance of the end of the victim's nose. Additionally, it was for the jury to say whether the amount of force used by defendant was suitable and moderate, or excessive, under the circumstances. *State v. Cook, supra.* The posture of the evidence regarding each negates any basis for holding that the state's evidence unequivocally established that defendant acted in self-defense as a matter of law, and, by the same token, affirms the propriety of submitting the question of self-defense to the jury.

■ Defendant's second point, that the prosecuting attorney, without any supporting evidentiary basis, improperly argued during closing argument that defendant "bit through the cartilage" of the victim's nose, is frivolous, at best, in light of the record. During the course of the trial defense counsel entered into a stipulation with the state that the following statement could be read to the jury as part of the state's case: "Comes now the State of Missouri, by and through William W. Clinkenbeard, Assistant Prosecuting Attorney within and for Buchanan County, Missouri,

and comes also the defendant, by and through her attorney, Gerald Liles, and stipulate that if Doctor Peltier had been called to testify regarding the nature and extent of injuries sustained by Regina Majeski, he would state that the left wing and a portion of the medial wing of the alar cartilage and a portion of the columella were severed and removed as a result of a human bite." The above statement, which was in fact read to the jury as part of the state's case, completely nullifies defendant's contention on appeal that there was no evidence to support the prosecutor's argument that the defendant "bit through the cartilage" of the victim's nose.

 Defendant's third point centers on the trial court's refusal to give defendant's requested instruction on self–defense. The trial court submitted the issue of self–defense to the jury by an appropriately modified version of MAI–CR 2.40. The instruction given by the trial court and the refused instruction tendered by defendant differed in only one respect. The one tendered by defendant included and the one given by the trial court omitted the following paragraph: "If Regina Majeski had a reputation for a rash, violent or turbulent disposition or character, and if the defendant knew of that reputation, you may consider such reputation and the defendant's knowledge thereof in deciding whether the defendant had reasonable cause to fear serious bodily harm in the hands of Regina Majeski." Paragraph 3 of the "Notes on Use" appended to MAI–CR 2.40 specifically provides that inclusion or omission of the above matter "will depend upon the evidence in each particular case". Concomitantly, it is firmly established in this state that the "reputation" of a victim for turbulence and violence cannot be established by proof of specific acts of violence on his part against persons other than the defendant. *State v. Nelson*, 484 S.W.2d 306, 308 (Mo.1972); and *State v. Marlin*, 177 S.W.2d 485, 489 (Mo. 1944). Regarding her third point, defendant relies solely on an isolated bit of evidence concerning a single, previous altercation involving the victim and a third party. However, this minimal bit of evidence

standing alone failed to establish that the victim had a "reputation" for violence and turbulence. No other evidence touching the matter is found in the record. Consistent with the principle recognized in *State v. Nelson, supra*, and *State v. Marlin, supra*, the meager evidence which defendant relied on did not rise to the requisite level of proof that the victim had a "reputation" for violence and turbulence and the trial court properly refused the defendant's tendered instruction on self–defense.

 Defendant asks this court to review her fourth and final point as "plain error". As previously noted, defendant complains that the trial court erred in permitting the prosecuting attorney to cross–examine the defendant about previous fights in which she had engaged. Defendant concedes that she neither properly objected to this line of cross–examination during the trial nor mentioned it in her motion for new trial. Her failure to preserve it for appellate review cannot be salvaged by resorting to Rule 30.20, the "plain error" rule. As spelled out in Rule 30.20, "plain error" is error which bespeaks of "manifest injustice or miscarriage of justice". When the nature of the error complained of is measured against the overall facts in this case, it cannot be said with conviction that the guilty verdict was an archetypical example of "manifest injustice or miscarriage of justice". Therefore, defendant's fourth and final point does not fall within the purview of the "plain error" rule.

Judgment affirmed.

All concur.