**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Cyrus Momus STILES,
Defendant-Appellant.**

**No. 14082.**

Missouri Court of Appeals,
Southern District,
Division Two.

June 12, 1986.

William C. Prince, Poole, Croessmann & Stevens, Springfield, for defendant-appellant.

William L. Webster, Atty. Gen., George Cox, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

HOGAN, Presiding Judge.

A jury has found defendant Cyrus Momus Stiles guilty of assault in the first degree in violation of § 565.050, RSMo 1978. The trial court found defendant to be a dangerous offender as defined by § 558.016.4, RSMo Supp.1984. His punishment was assessed at imprisonment for a term of 25 years. Defendant now appeals. We affirm.

The defendant has not directly challenged the sufficiency of the evidence to support the judgment of conviction, but it is to be borne in mind that the State, having had a verdict, is now entitled to have this court accept as true all evidence and inferences that tend to support the verdict and disregard all evidence and inferences to the contrary. *State v. Story*, 646 S.W.2d 68, 72 (Mo. banc 1983).

In the evening on March 17, 1984, defendant and Jairus Brown attended a wedding reception at the Ozark Country Inn in the north part of the City of Springfield, Missouri. Brown danced with the defendant's wife. This incident provoked a quarrel between the defendant and Brown. According to one witness, there was "kind of a scuffle" and at the urging of one of the guests, Brown left the premises.

In the early morning of March 18, defendant and Brown met outside a "lodge" in north Springfield. Their quarrel was renewed. Milton Adams, Brown's cousin, stepped between Brown and the defendant. The defendant said "back off, Milt," and Milt did so. Thereupon, the defendant reached under his sweater, produced a handgun and began firing at Brown. Brown was shot twice, once in the abdomen and once in the leg.

There was evidence that after the first shots were fired, Brown fell to the ground and began rolling in an attempt to avoid further injury. There was further evidence that six shots were fired; Brown and other witnesses testified that after Brown stopped rolling, the defendant stood over Brown, pointed his weapon at Brown's head and pulled the trigger of the empty handgun twice. Such, in sketch and outline, is the evidence upon which the defendant was found guilty.

The trial court instructed the jury on first-degree and second-degree assault. The defendant's first point is that the trial court erred in failing to instruct the jury on assault in the third degree. For several reasons, we cannot agree. In the first place, a trial court is not required to instruct the jury on a lesser-included offense unless there is an evidentiary basis for a verdict acquitting the defendant of the offense charged and convicting him of the lesser-included offense. Section 556.046.2, RSMo 1978; *State v. Olson*, 636 S.W.2d 318, 320–21[1–4] (Mo. banc 1982).

Here, the defendant was charged with attempting to kill or to cause serious injury to the victim by shooting him with a handgun. The evidence showed that the victim was shot twice by the defendant. The physician who first saw the victim testified that the abdominal wound was potentially lethal. Generally the use of a deadly weapon in the commission of an assault precludes the possibility of a conviction of assault in the third degree. *State v. Manning*, 664 S.W.2d 605, 608[4–6] (Mo.App.1984); *State v. Heitman*, 613 S.W.2d 902, 906[11, 12] (Mo.App.1981). When the defendant intends to shoot his victim, he is guilty of first- or second-degree assault, depending on the severity of the injury caused or intended. *State v. Manning*, 664 S.W.2d at 608[4–6]. Inasmuch as there was no evidentiary support for an acquittal of both first- and second-degree assault and a conviction of third-degree assault, an instruction on that offense was not required.

Further, it is significant that the jury found the defendant guilty of assault

in the first degree. In doing so, the jury obviously did not take the first step in considering a lesser-included offense, which would have been to find defendant guilty of second-degree assault. In such circumstances, the court's failure to instruct on third-degree assault was harmless, even if it was error. *State v. Householder*, 637 S.W.2d 324, 328 (Mo.App.1982); see also *State v. Lint*, 657 S.W.2d 722, 726[14, 15] (Mo.App.1983).

■ Defendant further argues that the trial court erred in overruling his objection to that part of the State's closing argument in which the Prosecuting Attorney stated:

"The Judge has just read you the jury instructions. And the most important of these instructions are instructions number 5 and 6, the verdict directors.

[COUNSEL FOR DEFENDANT]: Your Honor, that's objectionable. The prosecutor is not entitled to comment about which are the important instructions. They're all important. Every one of them is given to the jury for the jury to consider, and that's improper argument. I object to it.

THE COURT: That's overruled."

We are not inclined to take the remark concerning the "most important" instructions in isolation. What the Prosecuting Attorney was attempting to do—the whole argument considered—was correlate the facts with the evidence and so to argue that the State had proved its case. It is the prerogative of the court to instruct the jury as to the law, but certainly counsel may argue the facts as they pertain to the law declared in the instructions of the court. *State v. Jordan*, 646 S.W.2d 747, 751 (Mo. banc 1983). Such is a time-honored method of jury argument. Moreover, the trial court has considerable discretion in controlling the scope of oral argument, and its decision is to be overridden only when the argument is plainly unwarranted. *State v. Moore*, 620 S.W.2d 370, 373 (Mo.banc 1981); *State v. Armbruster*, 641 S.W.2d 763, 766 (Mo.1982). This point is also without merit.

The trial court submitted the issue of self-defense by Instruction No. 7, which advised the jury:

"One of the issues in this case is whether the use of physical force against Jairus Brown was justifiable. The use of physical force including the use of deadly force is justifiable if used in lawful self-defense. On that issue you are instructed as follows:

1. The state has the burden of proving beyond a reasonable doubt that the defendant did not act in lawful self-defense. If the evidence in this case leaves in your mind a reasonable doubt as to whether the defendant acted in lawful self-defense in using physical force against Jairus Brown, you must find the defendant not guilty.

2. If the defendant was not the initial aggressor in the encounter with Jairus Brown and if the defendant reasonably believed it was necessary to use deadly force to protect himself against what he reasonably believed to be the use of unlawful force putting himself in imminent danger of serious physical injury at the hands of Jairus Brown, then the defendant acted in lawful self-defense and must be acquitted.

3. In determining whether or not the defendant acted in lawful self-defense you should consider all the evidence in the case.

4. If Jairus Brown prior to the encounter made threats which were known by or communicated to the defendant, you may consider such threats as explaining the conduct or apprehensions of the defendant at the time of the encounter and for the further purpose of determining who was the aggressor.

5. If the defendant reasonably believed it was necessary to use the amount of physical force he used to protect himself from Jairus Brown, it is of no consequence that appearances turned out to be false. If the defendant acted in lawful self-defense, as submitted in this instruction, he must be acquitted even though there was no purposes on the part of Jairus Brown to harm him and no

actual necessity to use physical force as he used."

The defendant argues that the trial court should have included the fourth sentence of paragraph 4 of MAI–CR 2d 2.41.1, thus:

"If Jairus Brown prior to the encounter assaulted or directed any specific acts of violence against the defendant, you may consider them as explaining the conduct or apprehension of the defendant at the time of the encounter and for the further purpose of determining who was the aggressor."

Sundry precedents are cited, but a general discussion of justification as an excuse in assault cases is not warranted on this appeal. A person is entitled to use "deadly force" only when he is "... faced with actual, or at least reasonably apparent danger of losing his life or suffering serious bodily injury." *State v. Sprake,* 637 S.W.2d 724, 726[1–3] (Mo.App.1982); *State v. Mares,* 570 S.W.2d 332, 333–34[4] (Mo.App.1978). In terms, § 563.011(1), RSMo 1978, defines "deadly force" as "... physical force which the actor uses with the purpose of causing or which he knows to create a substantial risk of causing death or serious physical injury." While the use of force in self-defense is controlled by § 563.031, RSMo 1978, it is quite clear that a person is not entitled to use "deadly force" to resist an imminent assault and battery. *State v. Sprake,* 637 S.W.2d at 726[1–3]; *State v. Zweifel,* 615 S.W.2d 470, 475[12] (Mo.App.1981).

In the case at hand, the defendant shot his unarmed victim twice. Considering the evidence most favorably to the defendant, the record shows only that the victim was afraid he might be hurt by the defendant and that the victim struck or attempted to strike the defendant. At most, the evidence supports the possibility of an assault and battery, which would not justify the use of "deadly force." Inasmuch as the defendant used excessive force, he was not entitled to any instruction on self-defense. Instruction No. 7 represented an overabundance of caution on the part of the trial court. The defendant re-

ceived an instruction more favorable than that to which he was entitled, *State v. Sprake,* 637 S.W.2d at 726–27[1–3]; *State v. Zweifel,* 615 S.W.2d at 475[12], and he is in no position to complain.

There is no error in any respect briefed and submitted in this court, and accordingly the judgment is affirmed.

PREWITT, C.J., and CROW and MAUS, JJ., concur.