**STATE of Missouri, Respondent,**

v.

**Burgess SPURGEON, Appellant.**

No. 14876–1.

Missouri Court of Appeals,
Southern District,
Division One.

May 20, 1987.

Motion for Rehearing or Transfer to
Supreme Court Denied
June 10, 1987.

Susan Lynn Hogan, State Public Defender's Office, Columbia, for appellant.

William L. Webster, Atty. Gen., Jeffrey Philip Dix, Asst. Atty. Gen., Jefferson City, for respondent.

HOLSTEIN, Judge.

Defendant Burgess Spurgeon was convicted of one count of assault in the second degree. The jury assessed his punishment at three years imprisonment. Defendant now appeals claiming the court erroneously failed to give a self-defense instruction, MAI–CR 2d 2.41.1. The judgment is affirmed.

In examining the record for evidence of self-defense the reviewing court must consider the evidence in the light most favorable to the defendant. *State v. Chambers,* 671 S.W.2d 781, 783 (Mo. banc 1984).

The undisputed evidence showed the following: On June 20, 1984, the defendant entered the Longhorn Tavern in Dixon, Missouri, at approximately 6:30 p.m. The defendant had previously had problems with the tavern owner, Benjamin Finder. On the day in question the defendant had been drinking heavily. Other persons in the tavern that evening included Finder, bartender Kathy York, and patrons Ronald Baker, Frank Inman, Randy McQueary, and Harry (Speedy) Sinclair. An altercation occurred involving defendant and Finder. Finder sustained a broken right forearm requiring surgery to repair. There is conflicting evidence as to the details of the altercation.

The State's evidence indicated the following: Benjamin Finder, the owner and operator of the bar, had established a "rule" against defendant being allowed into the bar because of previous problems with the defendant. When defendant first entered the tavern, Kathy York was unsuccessful in attempting to get defendant to leave. She notified Finder who approached defendant. Finder also requested that defendant leave the tavern. Although Finder persisted in his request, the defendant began to play pool. At that point Finder picked up a sawed-off pool cue from behind the bar and while holding it at his side asked defendant to leave. At that point defendant grabbed a pool cue, broke it over his knee and threatened Finder. Defendant then charged Finder while swinging his broken pool cue at Finder's head. Finder raised his right arm to protect his head and the defendant hit Finder's arm, thereby breaking the bone in the forearm. With the help of other patrons defendant was subdued.

The evidence of defendant indicated the following: Prior to that evening defendant had not been told he could not enter the tavern. After entering the tavern, defendant was never asked to leave until he was getting ready to play pool. At that point in time Finder came from behind the bar carrying his sawed-off cue stick. The defendant testified as follows:

"I was probably five to eight feet away from him while I was talking to him. He told me to leave, and I told him, 'If you get rid of that club, so I can come by you, okay.' And he didn't drop the club. And I said, 'Do you intend to use that club,' he said, 'Yes, I do.' So, I broke a pool stick and was trying to deliberate which—what to do, and I got hit from behind. And I was mostly unconscious for the next three or four minutes. I just remember how surprised I was, since I knew Speedy Sinclair, he had a pool stick and it had already been broke. And the other person, Frank Inman, I didn't know him, but I know that it was him because him and Speedy Sinclair had the same type of hat on. It was the only thing I recognized. And then I come to, clear at the end of the bar a little hallway that goes to the latrines. And they started hitting me again, trying to hit me between the legs. But then, I got mostly hit just on the tips of the fingers and my feet. But at this time, I knew that they meant to do more than just beat me up, so I raised up and went right straight to the police station. I was there within a minute, and asked them to investigate.

Q. Okay. Well, the initial time you were hit, where were you hit? Where on your body did you get hit?

A. On my head. As far as—I don't remember being hit at all. I just remember how surprised I was that I was waking up and pool sticks coming from different directions and they were fighting with me.

Q. So people were hitting you when you woke up?

A. Yes. Both—I came to twice. Once around the pool table area, and I was just going around on the floor, standing up. I remember that part. And then I remember the last part where I was just laying in the hallway and they continued to beat on me ...

Q. Okay. Now, Mr. Spurgeon, you heard several people testify here today about swinging a pool stick and hitting Ben Finder in the arm. Did you do that?

A. No. I struck no one."

No other witnesses testified to a version of the altercation consistent with the above testimony by defendant.

If there is substantial evidence putting self-defense in issue it is the duty of the trial court to instruct on self-defense as a part of the law of the case whether or not the defendant requested the instruction. *State v. Ehlers*, 685 S.W.2d 942, 948 (Mo. App.1985). The burden of injecting the issue of self-defense rests on the defendant. § 563.031.4 RSMo 1986.

Taking as true the defendant's version of the facts and viewing it in a light most favorable to him, the striking of the blow to the victim never occurred, or the injurious blow was struck by someone other than the defendant. The defendant's testimony was that he did not strike anyone in response to the force threatened by Finder.

In the alternative, accepting as true the testimony of the other eye witnesses, the defendant was a trespasser, provoked the altercation and was the aggressor.

One who relies upon self-defense

(a) must not have provoked or been the aggressor in the assault;

(b) must believe that he is faced with the danger of having death, great bodily harm or a felony inflicted upon him;

(c) must have reasonable grounds for such belief;

(d) must not use more force than reasonably appears necessary to him under the circumstances to resist the danger with which he reasonably believes he is confronted;

(e) before resorting to extreme measures, he must do everything within his power consistent with his own safety to otherwise avoid the danger, and must retreat, if retreat is practicable; and

(f) must act in response to some unlawful force.

*State v. Hajek*, 716 S.W.2d 481, 483 (Mo. App.1986); *State v. Christie*, 604 S.W.2d 806, 808 (Mo.App.1980); § 563.031 RSMo 1986.

Whether we accept defendant's testimony that he did not strike the victim or the

testimony of the other witnesses that defendant was the aggressor, the evidence did not support an instruction on justifiable use of force in self-defense. The trial court properly refused the instruction. The judgment is affirmed.

CROW, C.J., and GREENE, P.J., concur.