**STATE of Missouri,
Plaintiff–Respondent,**

v.

**Christopher MORLEY,
Defendant–Appellant.**

No. 15201.

Missouri Court of Appeals,
Southern District,
Division Two.

March 22, 1988.

Motion for Rehearing or Transfer
Denied April 12, 1988.

Lew Kollias, Columbia, for defendant-appellant.

William L. Webster, Atty. Gen., Karen A. King, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

FLANIGAN, Judge.

A jury found defendant Christopher Morley guilty of voluntary manslaughter,

(§ 565.023),[1] and he was sentenced to imprisonment for seven years. Defendant appeals.

The charge arose out of an incident which occurred on November 27, 1986, in Poplar Bluff. The victim, William Dorian, 19, was fatally stabbed by defendant during an altercation between Dorian on the one hand, and defendant, 17, and his three companions on the other. The companions were Walter Painter, 16, Jody Fouts, and George Morley, 20. Fouts' age does not appear in the record, but he is older than Painter.

Defendant's sole point is that the evidence is insufficient to support the verdict "in that the evidence did not establish that defendant failed to act in lawful self-defense beyond a reasonable doubt, as defendant used deadly force only in response to, and to protect himself from, the victim's use of deadly force, when the victim swung a dangerous instrument at defendant after striking him several times previously with said instrument. Defendant only used the amount of force necessary to prevent or dissuade further attack upon him with the dangerous instrument, and did not continue the use of force upon the victim beyond that which was necessary to protect himself."

Defendant does not challenge the sufficiency of the evidence to support a finding of all of the elements of voluntary manslaughter as that offense is defined in § 565.023.1(1). His position is that the evidence showed, as a matter of law, that he was acting in self-defense and thus entitled to acquittal. The trial court gave an instruction on self-defense, based on MAICR3d 306.06. Defendant has not challenged the correctness or sufficiency of that instruction.

In assessing the sufficiency of the evidence to support the verdict, this court views the evidence, together with all reasonable inferences to be drawn therefrom, in the light most favorable to the verdict and ignores evidence and inferences contrary to the verdict. *State v. Mallett,* 732 S.W.2d 527, 530 (Mo. banc 1987). Any portion of defendant's evidence which supports a finding of guilty is also to be considered because defendant, by putting on evidence, takes the chance of aiding the state' case. *State v. Johnson,* 447 S.W.2d 285, 287–290 (Mo.1969); *State v. Manning,* 612 S.W.2d 823, 825 (Mo.App.1981).

At approximately 9:30 on November 27, 1986, Walter Painter, Jody Fouts, George Morley and defendant were conversing in front of Painter's home. Dorian emerged from a house about one-half block away. Dorian was about the same height as defendant and possibly thinner. Although it was a cold evening, Dorian wore only a jacket and a pair of shorts.

A member of defendant's group referred to Dorian as a "fag." Dorian took off his jacket and walked toward the group. They walked toward Dorian. Dorian threatened to whip all four of them. Defendant obtained a jack handle, weighing three or four pounds, from George's bicycle. George offered to fight with Dorian. Rather than fighting George, Dorian kicked at defendant. When Dorian lunged at him, defendant swung the jack handle and struck Dorian. Dorian grabbed the jack handle, twisted it from the hands of defendant, and threw it onto a lawn across the street.

While the others stood cursing and threatening Dorian, defendant crossed the street and retrieved the jack handle. As Dorian argued with George and Painter, defendant walked up behind Dorian with the jack handle. Dorian turned around, saw defendant holding the jack handle, and jerked it away from defendant again. Dorian began swinging the jack handle at defendant, striking him three or four times in the chest and ribs. Defendant removed a knife from his coat pocket and opened it. When Dorian drew the jack handle back to strike defendant again, defendant drew back the knife. Dorian swung the jack handle at defendant. Defendant ducked and thrust the knife into Dorian's chest. The stab wound was the sole cause of Dorian's death. He died at the scene.

Section 563.031 reads, in pertinent part:

"1. A person may, subject to the provisions of subsection 2, use physical

---

**1.** All references to statutes are to RSMo 1986, V.A.M.S.

force upon another person when and to the extent he reasonably believes such to be necessary to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful force by such other person, unless:

(1) The actor was the initial aggressor; except that in such case his use of force is nevertheless justifiable provided

(a) He has withdrawn from the encounter and effectively communicated such withdrawal to such other person but the latter persists in continuing the incident by the use or threatened use of unlawful force; or

. . . . .

(c) The aggressor is justified under some other provision of this chapter or other provision of law;

(2) Under the circumstances as the actor reasonably believes them to be, the person whom he seeks to protect would not be justified in using such protective force.

2. A person may not use deadly force upon another person under the circumstances specified in subsection 1 unless he reasonably believes that such deadly force is necessary to protect himself or another person against death, serious physical injury, rape, sodomy or kidnapping.

. . . . .

4. The defendant shall have the burden of injecting the issue of justification under this section."

Generally, where the evidence is conflicting, the issue of self-defense is one for the jury. *State v. Chambers*, 671 S.W.2d 781, 782 (Mo. banc 1984); *State v. Teter*, 724 S.W.2d 538, 541 (Mo.App.1986); *State v. Christie*, 604 S.W.2d 806, 808 (Mo.App. 1980); *State v. Miller*, 653 S.W.2d 222, 224 (Mo.App.1983); *State v. Phroper*, 619 S.W. 2d 83, 88 (Mo.App.1981). "Acquittal of an accused by reason of self-defense as a matter of law, so as to bar submission of the charged offense to the jury, is relegated to those exceptionally rare instances where all the undisputed and uncontradicted evidence clearly establishes self-defense." *State v. Christie*, supra, at 808. "Rarely is self-defense declared by law so as to bar the submission of the homicide offense altogether." *State v. Miller*, supra, at 224.

■ Although defendant has the burden of injecting the issue of self-defense, § 563.031.4, it does not matter which side produces the evidence or from whose witness it comes. *State v. Fincher*, 655 S.W.2d 54, 58 (Mo.App.1983). If there is evidence to support that issue, the burden rests upon the state to prove beyond a reasonable doubt that the homicide was not justified. Defendant bears no burden of proof on the issue of self-defense, but merely bears the burden of "injecting" the issue into the case from whatever evidentiary source. *Id.*

■ Under the circumstances here, defendant was not entitled to use deadly force upon Dorian unless defendant reasonably believed "that such deadly force [was] necessary to protect himself or another person against death [or] serious physical injury...." § 563.031.2. As used in that statute, "deadly force" means physical force which the actor uses with the purpose of causing, or which he knows to create a substantial risk of causing, death or serious physical injury. § 563.011(1). "Serious physical injury" means physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body. § 556.061(26). Generally an imminent assault and battery does not justify resistance by deadly force. *State v. Stiles*, 712 S.W.2d 42, 45 (Mo.App. 1986); *State v. Fincher*, supra, at 60; *State v. Sprake*, 637 S.W.2d 724, 726 (Mo. App.1982).

A person who is not an aggressor may use deadly force if he is faced with actual or reasonably apparent danger of losing his life or suffering serious bodily injury by the act of his attacker, *State v. Chambers*, supra, at 783; *State v. Sprake*, supra, at 726; *State v. Fincher*, supra, at 58–59; *State v. Stiles*, supra, at 45; *State v. Galbraith*, 723 S.W.2d 55, 62 (Mo.App.1986). Some cases state that he has a duty to retreat if retreat is practicable. *State v. Spurgeon*, 730 S.W.2d 595, 596 (Mo.App. 1987); *State v. Galbraith*, supra, at 62; *State v. Fincher*, supra, at 59; *State v. Miller*, supra, at 224.

In *State v. Jordan,* 646 S.W.2d 747, 751 (Mo. banc 1983), the court said that prior to the enactment of The Criminal Code in 1977, effective January 1, 1979, Missouri courts had consistently held that there was a duty to retreat before using deadly force. The court also said, at 752: "The status of the duty to retreat as a positive rule of law has not been expressly definitively declared since the effective date of The Criminal Code."

The comment under § 563.031, found in V.A.M.S., reads in part:

"Missouri, unlike the majority of jurisdictions, imposes no duty to retreat on the actor before he can resort to deadly force in self-defense. A person who is assailed in a place in which he is entitled to be is not bound to retreat before exercising his right to self-defense, *State v. Bartlett,* 170 Mo. 658, 71 S.W. 148 (1902). Thus, the law of self-defense has been held to imply a right of attack when it appears reasonably necessary for protection against an impending assault, *State v. McGee,* 361 Mo. 309, 234 S.W.2d 587 (1950); followed in *State v. Hicks,* 438 S.W.2d 215 (Mo.1969). The Code retains the 'no retreat' rule."

The foregoing comment appears inconsistent with some of the above-cited cases, decided after the effective date of The Criminal Code. However, the same comment also states:

"Of course, if a defendant stands his ground and uses force on another when he could have avoided injury or risk of injury by merely retreating, a jury would be entitled to take these circumstances into consideration when determining whether the defendant's belief in the necessity of using physical force was reasonable."

On the instant record it is difficult to identify the initial aggressor or aggressors. The confrontation between Dorian and the quartet which included defendant was a mutual one. At its outset, however, only defendant possessed a knife and the jack handle.

During the course of the altercation Dorian wrested the jack handle from defendant and threw it onto a lawn across the street. Defendant retrieved the jack handle. At that moment defendant alone possessed the jack handle and the knife, and none of the other participants had a deadly weapon. The jury could find beyond a reasonable doubt that defendant at that moment could have retreated, leaving a situation where Dorian was outnumbered three-to-one by defendant's cohorts.

Instead, defendant rejoined the melee. The jury could reasonably find beyond a reasonable doubt that defendant was not entitled to use deadly force upon Dorian because, under the above circumstances, defendant could not reasonably believe that deadly force was necessary to protect himself or any of his comrades against death or serious physical injury. The fact that the evidence would support that finding invalidates defendant's point.

This court holds that the evidence did not show as a matter of law that defendant, when inflicting the fatal stab wound, was acting in self-defense and thus entitled to acquittal.

The judgment is affirmed.

PREWITT, P.J., and HOGAN and MAUS, JJ., concur.