STATE of Missouri, Respondent,

v.

**Crozet A. WILEY, Appellant.**

**No. SD 30014.**

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 7, 2011.

Motion for Rehearing or Transfer to Supreme Court Denied Feb. 23, 2011.

Application for Transfer Denied
May 31, 2011.

---

Melinda K. Pendergraph, Columbia, MO, for Appellant.

Chris Koster, Atty. Gen., James B. Farnsworth, Asst. Atty. Gen., Jefferson City, for Respondent.

DANIEL E. SCOTT, Chief Judge.

Appellant Crozet Wiley, who stabbed and seriously injured an acquaintance, challenges his first-degree assault and armed criminal action convictions. Finding no prejudicial error, we affirm.[1]

## Facts and Background

The evidence, viewed favorably to the verdict, indicated that Gary Hatley walked to Debbie Craig's home one morning to help with a sewer problem. He brought a 12–pack, drank five to eight beers within an hour, and had a "good buzz going" when he headed home with the rest of his beer.

Appellant hollered out for a beer as Hatley approached. Hatley walked up to Appellant, gave him a beer, and they talked near Appellant's front porch. Hatley next recalls lying out by the street, feeling something wet, looking down, and seeing blood all over his shirt. Perhaps due to passing out, Hatley, who had no weapon and no dispute with Appellant, does not recall the stabbing itself or know why Appellant did so.

Bleeding profusely from his chest wound, Hatley managed to flag down a passing police car and was life-flighted to a Memphis hospital. Appellant went to the home of his neighbor, who was folding clothes. He stuffed his knife into a sock, asked her to keep it for him, and left. The neighbor notified the police, who recovered the knife, which still had blood on it.

Appellant, who admitted having three prior felonies, including two for felony assault, was tried as a persistent offender. He claimed self-defense and testified at trial that he had just come home from the liquor store when Hatley approached— drunk, staggering, and belligerently calling Appellant "n*gger," then "hit me, like, in my left cheek, and that's when he got stabbed."

The jury found Appellant guilty as charged. He raises three points on ap-

---

1. Unless otherwise indicated, statutory citations are to RSMo Cum.Supp.2007 and rule references are to Missouri Court Rules (2009).

peal. We will address additional evidence in the context of those claims.

## Point I

■ Appellant claims the trial court erred in excluding evidence that Hatley, as he left Craig's home, said he was "going to kill that n*gger." Although related evidence was admitted,[2] Appellant urges that Hatley's statement "was relevant to who the initial aggressor was" and its exclusion prejudiced Appellant's theory of self-defense.[3] We review such evidentiary rulings for abuse of discretion. *State v. Wilkins*, 229 S.W.3d 204, 209 (Mo.App.2007).

In offering this evidence at trial, defense counsel cited *State v. Bell*, 950 S.W.2d 482 (Mo. banc 1997), which notes that " 'statements of a declarant's present mental condition ... are excepted from the hearsay ban' and are admissible 'in limited situations when they are relevant and the relevancy outweighs their prejudicial effect.' " *Id.* at 483 (quoting *State· v. Boliek*, 706 S.W.2d 847, 850 (Mo. banc 1986)). *Bell* is one of several cases indicating that such evidence may be admissible and "especially relevant" where a self-defense claim has put the victim's mental state at issue. *See also State v. Ford*, 639 S.W.2d 573, 574–75 (Mo.1982); *State v. Rios*, 234 S.W.3d 412, 422 (Mo.App.2007); *State v. Pagano*, 882 S.W.2d 326, 331 (Mo.App.1994); *State v.*

*Randolph*, 698 S.W.2d 535, 539 (Mo.App. 1985); *State v. Singh*, 586 S.W.2d 410, 418 (Mo.App.1979). By contrast, according to our supreme court, the defendant's state of mind is "wholly irrelevant to the question of who was the initial aggressor." *State v. Gonzales*, 153 S.W.3d 311, 314 (Mo. banc 2005).

The trial court excluded Hatley's statement because Appellant had not heard and was not aware of it. This might have been good reasoning if the question was whether Appellant reasonably feared Hatley, but defense counsel expressly said the evidence was "not to show Crozet Wiley's state of mind or to go to his reasonableness." Thus, the stated reason for exclusion arguably was error.

■ However, we need not determine this or dissect other arguments pro and con about this evidence.[4] We review evidentiary rulings for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial. *State v. Tolen*, 295 S.W.3d 883, 889 (Mo.App.2009). Thus, we consider whether the evidence, including the excluded statement, warranted a self-defense instruction.[5] For several reasons, that answer is "no."

■ The short explanation is that, subject to "castle doctrine" exceptions inapplicable here,[6] deadly force cannot be used to

---

**2.** Craig testified that Hatley left her home "very agitated, very angry." Defense counsel, over objection, was allowed to ask Hatley if he "didn't say anything to the effect of you were gonna get, go get somebody?" Appellant testified that he was concerned about being hurt by Hatley, who was "calling me a n*gger."

**3.** Appellant suggests, for the first time on appeal, alternate grounds for admission. Even if these were persuasive, which they are not, there is no error because these theories were not raised at trial.

**4.** For example, the state claims the statement was not legally relevant without some showing or reason to believe Hatley was referring to Appellant. Appellant's counsel agrees Hatley probably was not talking or thinking about Appellant, but argues that the statement was still admissible.

**5.** "This Court reviews *de novo*, as a question of law, whether a jury was properly instructed." *Morgan v. State*, 272 S.W.3d 909, 911 (Mo.App.2009).

**6.** *See* § 563.031.2(2) & (3). Subpart (2), requiring actual or attempted unlawful entry of

repel a simple assault and battery. *State v. Burks*, 237 S.W.3d 225, 229 (Mo.App. 2007); *Dorsey v. State*, 113 S.W.3d 311 (Mo.App.2003).

■ A longer and equally valid reason is that, given Appellant's use of a knife, the special self-defense instruction on use of deadly force was warranted only by substantial evidence of four prerequisites to using deadly force in self-defense:

(1) an absence of aggression or provocation on the part of the defender, (2) a real or apparently real necessity for the defender to kill in order to save himself from an immediate danger of serious bodily injury or death, (3) a reasonable cause for the defender's belief in such necessity, and (4) an attempt by the defender to do all within his power consistent with his personal safety to avoid the danger and the need to take a life.

*Burks*, 237 S.W.3d at 229 (quoting *State v. Chambers*, 671 S.W.2d 781, 783 (Mo. banc 1984)). Assuming *arguendo* that Hatley was the initial aggressor (the issue on which Appellant sought to offer Hatley's statement) and that Appellant had no duty to retreat,[7] there still was no evidence that Appellant faced "immediate danger of seri-ous bodily injury or death," or that he needed "to kill in order to save himself," or that he had "reasonable cause" to think killing was necessary.

*Dorsey* is instructive. While fighting an unarmed man, Dorsey pulled a pocket knife and cut his opponent severely. Dorsey claimed self-defense and that his opponent had used racial epithets. This court noted, however, that "insults are not sufficient provocation to justify an assault or make the speaker the aggressor," and "mere battery would not justify the use of a weapon against an unarmed assailant." 113 S.W.3d at 316. "The use of deadly force in self-defense requires the real or apparently real necessity for the defender to kill or use deadly force to protect himself from immediate danger of serious bodily injury or death. Deadly force cannot be used to repel a simple assault and battery." *Id.* at 317 (citations omitted).

Appellant here, like Dorsey, was quick to use deadly force against an unarmed man. By his own testimony, Appellant "felt" Hatley's lone punch, but was not injured, yet in a "split second" opened his knife and stabbed Hatley. In this and

"a dwelling, residence, or vehicle lawfully occupied by" the person claiming self-defense, was not applicable based upon the facts before us. Subpart (3) is broader, applying to actual or attempted unlawful entry of "private property that is owned or leased" by the self-defense claimant, but it was not enacted until 2010, which was after the date that Appellant stabbed Hatley.

7. Aside from issues of deadly force under § 563.031.2, a person has no duty to retreat from his residence. § 563.031.3. Appellant now claims he "was on his front porch when attacked," and argues therefrom that he had no duty to retreat, but his trial testimony was not so clear:

Q. You stayed out on your front porch?
A. I didn't go in my house.
Q. You were out on the sidewalk?
A. I just made it to my sidewalk.

Q. You just made it to your sidewalk? Didn't you just say that you put your beer and the vodka down on your porch?
A. I sat it down as he was coming up.
Q. As he was coming, so you went to your porch and then came back out to the sidewalk?
A. No, my porch, and my sidewalk is right there together.
Q. So you just, you were just off of your porch, is what you're telling me?
A. I was right there in the yard.
Q. Okay and you said—
A. My porch is not as big as this right here, the sidewalk.

We need not decide if or when Appellant was on his porch or whether that affected *Burks'* fourth prerequisite because there was no evidence of prerequisite (2) or (3).

other respects, the record does not justify a self-defense/deadly force instruction even if Hatley were the initial aggressor. Thus, any erroneous exclusion of "initial aggressor" evidence was not prejudicial and does not warrant reversal. We deny Point I.

## Point III

■ Our Point I ruling necessarily dooms Point III, which urges acquittal because the State allegedly failed to disprove Appellant's claim of self-defense. If the record did not support a self-defense instruction, then, *a fortiori*, it did not mandate acquittal on that basis. Point III thus fails.[8]

## Point II

■ Appellant claims the trial court clearly erred in overruling his *Batson*[9] challenge to the state's strike of an African–American venireperson, S.R.

In voir dire, the prosecutor asked potential jurors whether words or insults could justify use of physical force against another person. Apparently S.R. alone raised his hand and said "it depends on what the words are." This discussion followed:

[Prosecutor]: It would depend on what the words are. What kind of words might justify use of force?

[S.R.]: I mean, call me on my race, something like that.

[Prosecutor]: Calling you on your race?

[S.R.]: Yeah.

[Prosecutor]: Anything else that you can think of, that might just [*sic*] using force?

[S.R.]: No, sir.

[Prosecutor]: Just that?

[S.R.]: Yes.

Appellant raised a *Batson* challenge when the state struck S.R. The prosecutor explained that:

[T]he victim in this case is Caucasian. There may be some evidence in this case that a racial slur may have been made during the course of some of these events. [S.R.] indicated that he thought that words alone in certain circumstances would be enough to justify violence, that's my recollection, which is contrary to the instructions and the law.

Defense counsel replied that S.R. mentioned "force," not "violence," and opined that "just due to [S.R.]'s race, I believe that, that's why he believes he would have an issue specifically with that word, people of a different word [*sic*] also have issues with that word."

The trial court recalled S.R. saying "that words could lead, under certain circumstances to, to an individual using force against another individual," and found the state's reasons for striking S.R. were race neutral and not pretextual.[10] The court

---

8. Indeed, acquittal as a matter of law based on self-defense is "exceptionally rare" (*State v. Morley*, 748 S.W.2d 66, 68 (Mo.App.1988)) and wholly inappropriate here. The jury could believe beyond a reasonable doubt from the evidence that Hatley did not attack or provoke Appellant, Appellant's use of deadly force was not reasonably necessary, Appellant had the ability to avoid any perceived danger, Appellant's testimony was not credible, and Appellant hid the knife and lied to police in an effort to conceal his crime. Self-defense is an issue for the fact-finder when there is conflicting evidence or different inferences could be reasonably drawn from the evidence. *State v. Henderson*, 311 S.W.3d 411, 414 (Mo. App.2010).

9. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). *Batson*'s history and subsequent case law are surveyed in *State v. Bateman*, 318 S.W.3d 681, 688–91 (Mo. banc 2010).

10. We have disregarded the trial court's gratuitous observations that S.R. also said he knew Appellant and his family, which could

also noted that four of the 12 jurors were "African–American of the same race of the defendant, that's, certainly more than the statistical make up of the county."

 The Equal Protection Clause forbids prosecutors from striking potential jurors "solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case." *Batson*, 476 U.S. at 89, 106 S.Ct. 1712. Upon Appellant's *Batson* challenge, the state had to offer a reasonably specific and race-neutral reason for its strike, after which Appellant had to show the reason was pretextual and the strike was racially motivated. *See State v. Morrow*, 968 S.W.2d 100, 113 (Mo. banc 1998). However, at all times it was Appellant's burden to prove racial motivation. *See Purkett v. Elem*, 514 U.S. 765, 768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995); *State v. Koenig*, 115 S.W.3d 408, 411 (Mo.App.2003).

 We defer greatly to a trial court's *Batson* rulings, which rely heavily on credibility determinations. *State v. Martin*, 291 S.W.3d 269, 277 (Mo.App. 2009). We will overturn such a ruling only if it was clearly erroneous, which means we must definitely and firmly believe a mistake was made. *State v. Edwards*, 116 S.W.3d 511, 525 (Mo. banc 2003); *State v. Cole*, 71 S.W.3d 163, 172 (Mo. banc 2002).

We are not definitely and firmly convinced of any mistake here, so we cannot say the trial court clearly erred. Appellant does not question the state's voir dire

inquiries about insults and physical force. Defense counsel asked questions on the same topic, directing some specifically to S.R., who affirmed his earlier statements. No one else, of any race, responded as S.R. did.

Appellant's reliance on *State v. McFadden*, 216 S.W.3d 673 (Mo. banc 2007), is misplaced because the state struck all racial minorities from that jury. That was not true here; one-third of the seated jurors were African–Americans.

 "A prosecutor may base a peremptory strike on past experience, 'hunches,' or 'horse sense,' without violating *Batson* so long as the basis for the strike is racially-neutral." *State v. Williams*, 159 S.W.3d 480, 484 (Mo.App.2005). The trial court did not clearly err in finding that the state's reason for striking S.R., given the anticipated evidence and defense to the charged crime, was race neutral and not pretextual.[11] Point II is denied. The judgment and convictions are affirmed.

BATES and FRANCIS, JJ., concur.

---

make it awkward for S.R. to sit on the jury. *See Bateman*, 318 S.W.3d at 690.

11. Appellant suggests that S.R. could not be stricken from the jury, notwithstanding his voir dire statements and the trial court's race-neutral finding, because racial slurs "have a different connotation" and are "particularly harmful and inflammatory for blacks," and "certainly members of a racial minority

would necessarily have a greater racial sensitivity to such slurs." Yet S.R. was the only African–American who responded as he did, which highlights just one of the weaknesses of equating sensitivity with race. At any rate, we are not convinced by Appellant's argument, which arguably smacks of the stereotyping that *Batson* and its progeny counsel against.