

# In the Missouri Court of Appeals
# Eastern District

**DIVISION FOUR**

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED112696 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of Warren County |
| v. | ) | Cause No. 23BB-CR00071-01 |
| | ) | |
| DANIELLE LECHOCKI, | ) | Honorable Thomas J. Frawley |
| | ) | |
| Appellant. | ) | Filed: September 9, 2025 |

### Introduction

Danielle Lechocki (Defendant) appeals the judgment entered upon her conviction of one count of attempted unlawful use of a weapon. She argues the trial court erred in refusing to instruct the jury regarding self-defense. Because we find there was substantial evidence in the record to require such an instruction, we reverse.

### Background

The State charged Defendant with one count of unlawful use of a weapon for exhibiting a knife in an angry or threatening manner, and one count of assault in the fourth degree for pointing and walking toward the complainant (Complainant) with a knife. These charges arose from an incident that took place between Defendant and Complainant on November 6, 2022. Approximately one week prior to the incident, Defendant moved into

Anchor House, a facility that helps veterans in need of assistance. Defendant had served in the Marines from 2009 through 2012, and she suffered from remittent multiple sclerosis, which periodically affected the left side of her body with numbness and her vision in her left eye. She testified these issues were present on the day of the incident, and she had planned to go to the hospital. Complainant was also a resident of Anchor House. She testified that on the day of the incident, she had a broken elbow, a sprained shoulder, and a strained neck, for which her right arm was in a sling.

On November 6, 2022, Defendant was sitting outside the front doors of Anchor House with two other residents, when Complainant came outside and asked to join them. Defendant testified she was upset with Complainant because of some things Complainant had been saying about Defendant, and she wanted to talk to Complainant about it. Defendant testified Complainant was angry that Defendant disagreed with her, and Complainant was threatening Defendant, saying she would "mollywock" her, which meant she would hit her, and that Defendant would be sorry she came to Anchor House. Defendant testified Complainant had a sling on, but she had taken it off. Defendant felt intimidated by Complainant because Complainant often threatened people, and Defendant was aware Complainant had gotten into physical altercations in the past at Anchor House because Complainant had told her about them.

Defendant testified she carried a knife in her backpack for protection, due to her physical limitations and the fact that she had been attacked before on an evening walk and was unable to defend herself. Defendant testified that as Complainant was threatening to "mollywock" her, Complainant lunged toward Defendant. One of the residents (Resident) outside with Defendant got in between Complainant and Defendant and tried to push

2

Complainant back inside the building. However, Defendant testified that Resident was small and had her own physical issues, and Defendant was not certain Resident could hold Complainant back. Defendant testified she felt "extremely threatened" by Complainant, and she was afraid her medical condition would prevent her from physically defending herself, so Defendant retrieved her knife from her backpack. Defendant believed she would suffer serious physical injury if she did not take steps to defend herself. Defendant testified she did not intend to harm Complainant, but to scare her. Defendant told the responding officer that she drew the knife to show she was not a pushover.

Complainant testified she had been trying to help Defendant since Defendant moved into Anchor House, at the direction of Anchor House management. Complainant testified that when she came outside, Defendant yelled at her about what Complainant had been saying about her, and then Defendant pulled out a knife. Complainant testified Defendant was close enough to stab Complainant at one point, but Resident jumped in to push Defendant back so Complainant could get away. Complainant stated she eventually went back into the building. Complainant denied telling Defendant she was going to "mollywock" Defendant, but explained the term meant to hit someone and that it was a joke.

Resident testified that Complainant and Defendant were arguing, and Resident got up and tried to push Complainant back inside the building. Resident said she could not remember who started the argument, but Resident got in between Complainant and Defendant because she did not want anything else to happen.

3

Video surveillance footage showed Defendant retrieving the knife from her backpack, but Complainant was off-screen. Resident's feet were visible in the video as she pushed Complainant back toward the building.

Defense counsel submitted a self-defense instruction, which the trial court denied. The jury acquitted Defendant of fourth-degree assault. On the charge of unlawful use of a weapon, the jury found Defendant guilty of the lesser-included offense of attempted unlawful use of a weapon. The trial court sentenced Defendant to two days in jail and a fine of $1,000, the latter of which would be waived upon Defendant's completion of 25 hours of community service.

**Discussion**

Defendant's sole point on appeal is that the trial court erred in refusing her proffered self-defense instruction because there was substantial evidence in the record supporting the instruction. We agree.

We review a trial court's refusal of a requested jury instruction *de novo*. State v. Hurst, 663 S.W.3d 470, 473 (Mo. banc 2023). We view the evidence in the light most favorable to the submission of the instruction, taking "the defendant's testimony regarding the facts and circumstances of the defense to be true and consider[ing] whether those facts are legally sufficient to support the instruction." Id.

The quantum of proof necessary to require a self-defense instruction is "substantial evidence," which is "evidence putting a matter in issue." State v. Bruner, 541 S.W.3d 529, 535 (Mo. banc 2018) (discussing State v. Westfall, 75 S.W.3d 278, 280 n.7 (Mo. banc 2002), and subsequent cases). "If the evidence tends to establish the defendant's theory, or supports differing conclusions, the defendant is entitled to an instruction on it."

4

Westfall, 75 S.W.3d at 280.  Such evidence "may come from the defendant's testimony alone as long as the testimony contains some evidence tending to show that [s]he acted in self-defense."  Id.

Section 563.031[1] contains the elements of self-defense a defendant must show by substantial evidence to merit an instruction:

> 1. A person may, subject to the provisions of subsection 2 of this section, use physical force upon another person when and to the extent he or she reasonably believes such force to be necessary to defend himself or herself . . . from what he or she reasonably believes to be the use or imminent use of unlawful force by such other person, unless:
>
>    (1) The actor was the initial aggressor; except that in such case his or her use of force is nevertheless justifiable . . .
>
> 2. A person shall not use deadly force upon another person under the circumstances specified in subsection 1 of this section unless:
>
>    (1) He or she reasonably believes that such deadly force is necessary to protect himself, or herself . . . against death, serious physical injury, or any forcible felony[.]

The State argues the trial court correctly denied Defendant's self-defense instruction because as a matter of law, deadly force cannot be used to repel a simple battery. Defendant disputes that displaying the knife as she did here constituted deadly force, but she argues that if the degree of force was in dispute, it was up to the jury to determine both the degree of force used and whether it was justified under the circumstances.  We agree.

Regarding the legal standard for the use of deadly force in self-defense, the State cites a number of Missouri cases containing the language that deadly force cannot be used to repel a simple assault and battery, including Bruner, 541 S.W.3d at 538; State v. Wiley,

---

[1] All statutory references are to RSMo. Supp. 2024, unless otherwise indicated.

337 S.W.3d 41, 45 (Mo. App. S.D. 2011); and State v. Dorsey, 113 S.W.3d 311, 316 (Mo. App. S.D. 2003). Section 563.011(2) defines "deadly force" as "physical force which the actor uses with the purpose of causing or which he or she knows to create a substantial risk of causing death or serious physical injury."

While certainly there are many minor attacks that will not justify the use of deadly force, the determination of whether deadly force is justified has always been dependent on the facts of each case, and must be made with particular attention to the statutory language. See Bruner, 541 S.W.3d at 536-37 (statute, rather than common law elements of self-defense, should govern analysis). It is important to note that the current version of Section 563.031, along with the corresponding definitions found in Section 563.011, do not foreclose the possibility that deadly force can be used to protect a person from an imminent assault.[2]

In 2007, the Missouri General Assembly amended Sections 563.031 and 563.011. Before 2007, Section 563.031 prohibited the use of deadly force unless a person reasonably believed it was "necessary to protect himself or another against death, serious physical injury, rape, sodomy, or kidnapping, or serious physical injury through robbery, burglary, or arson." Section 563.031.2, RSMo. 2000. In 2007, the General Assembly replaced the list of specific criminal offenses, stating instead that deadly force may be justified where a

---

[2] Even cases applying older versions of the statute acknowledged this possibility. State v. Dorsey is cited in both Bruner and Wiley, but the Dorsey court cites State v. Morley, 748 S.W.2d 66 (Mo. App. S.D. 1988) for the proposition that deadly force cannot be used to repel a simple battery. 113 S.W.3d 311, 316 (Mo. App. S.D. 2003). However, rather than this definitive statement, the Morley court acknowledged, "*[g]enerally* an imminent assault and battery does not justify resistance by deadly force," 748 S.W.2d at 68 (emphasis added). Where a "simple battery" means one that does not carry with it a reasonable belief in an imminent threat of death, serious physical injury, or a forcible felony, we would agree that Section 563.031 would not permit the use of deadly force in defense of such an attack, but prefer using the language of the statute itself over "simple battery." We also note Missouri courts have acknowledged that, depending on the circumstances, a punch may cause death or serious physical injury. State v. O'Keefe, 681 S.W.3d 615, 631 (Mo. App. E.D. 2023) (citing cases).

person reasonably believes it is necessary to protect himself or herself or a third person "against death, serious physical injury, or *any forcible felony*." Section 563.031.2 (emphasis added). The General Assembly also added a corresponding definition of "forcible felony" to Section 563.011:

> [A]ny felony involving the use or threat of physical force or violence against any individual, including but not limited to murder, robbery, burglary, arson, kidnapping, *assault*, and any forcible sexual offense[.]

Section 563.011(3), RSMo. Supp. 2007 (emphasis added).[3] Assault is now a separate potential basis justifying the use of deadly force alongside—and distinct from—serious physical injury. To date, Missouri case law does not contain a comprehensive discussion of the implications of this newer language to the legal standard regarding the use of deadly force in cases involving imminent threats of assault. Though an imminent assault would often carry with it a risk of serious physical injury, the plain language of Sections 563.011 and 563.031 read together contemplates that an imminent assault involving the use or threat of physical force or violence alone could justify the use of deadly force. See State v. Graham, 149 S.W.3d 465, 457 (Mo. App. E.D. 2004) (citing Hadlock v. Director of Revenue, 860 S.W.2d 335, 337 (Mo. banc 1993)) ("Every word, clause, sentence and section of a statute should be given meaning, and under the rules of statutory construction statutes should not be interpreted in a way that would render some of their phrases to be mere surplusage"). Regardless, the issue of whether the degree of force used was justified

---

[3] This is also the current definition, now codified in Section 563.011(4), RSMo. 2016.

under the circumstances is for a jury to determine, dependent on the particular facts of each case.[4]

Turning to the specific circumstances in this case, the parties dispute whether Defendant's display of the knife here constituted deadly force, which again, is "physical force which the actor uses with the purpose of causing or which he or she knows to create a substantial risk of causing death or serious physical injury." Section 563.011(2). "The question of whether deadly force was used depends not only on the amount of force used but also on the defendant's purpose to cause, or awareness of the likelihood of causing, death or serious physical injury." Westfall, 75 S.W.3d at 282 (quoting MAI CR3d 306.06, Notes on Use 4(b)[5]).

Here, the evidence showed Defendant retrieved a knife from her backpack and held it in her hand. Complainant testified Defendant switched the knife from her left to her right hand and "start[ed] coming like she's going to come at me with it." The parties agree the

___

[4] While not directly implicated here, it is important to note that the General Assembly's changes to Missouri's self-defense statutes also included the addition of subsection 3 to Section 563.031, which eliminated a person's duty to retreat before acting in self-defense when the person is lawfully present on the premises:

> A person does not have a duty to retreat:
> (1) From a dwelling, residence, or vehicle where the person is not unlawfully entering or unlawfully remaining;
> . . . or
> (2) If the person is in any other location such person has the right to be.

Thus, to whatever degree previous cases have required a person to retreat from a situation before resorting to self-defense, the Missouri General Assembly has determined such retreat is not now required under this "Stand Your Ground" law. See Bruner, 541 S.W.3d at 536-37 (noting cases addressing common law self-defense elements, including "an attempt to do all within defendant's power consistent with personal safety to avoid the danger," should no longer be followed); but see, e.g., State v. Robinson, 711 S.W.3d 921, 929 (Mo. App. E.D. 2025) (noting "Missouri law requires a defendant to do everything in their power, consistent with their personal safety, to avoid the danger and the need to take a life"). While many cases published since 2007 still reiterate the common law requirements to attempt to safely avoid the danger and the need to take a life, if an individual satisfies the requirements of Section 563.031.3, there is no duty to retreat. Based on the current language of the statute, a person in reasonable fear of an imminent threat of a forcible felony, including assault, may justifiably use deadly force in self-defense under these circumstances, without having to first retreat from the situation.

[5] Identical language appears in the notes on use of the current version of the instruction, applicable here: MAI CR4th 406.06, Notes on Use 7.

surveillance video showed Defendant retrieving and holding the knife. The State emphasizes that the knife here was a weapon readily capable of deadly force. While this is true, it does not automatically follow that Defendant actually *used* deadly force with the knife.[6] Defendant testified her intention was not to hurt Complainant, but to convey that the Defendant was not a pushover. Additionally, the jury found Defendant not guilty of fourth-degree assault for pointing and walking toward Complainant with a knife, and they did not find her guilty of the completed offense of unlawful use of a weapon by exhibiting the knife in an angry or threatening manner. Rather, the jury only found Defendant guilty of attempting such unlawful use.

In light of the foregoing, we cannot say definitively that Defendant's actions here constituted deadly force, as it is irrelevant to the question of whether the trial court should have instructed the jury on self-defense. The Supreme Court of Missouri has made clear that if a factual issue regarding the degree of force used arises from the evidence, the jury should determine the level of force used and accordingly, whether such force was justified under the circumstances. Westfall, 75 S.W.3d at 283 (noting factual issue regarding whether deadly force was used is province of jury); State v. O'Keefe, 681 S.W.3d 615, 630 (Mo. App. E.D. 2023); see also MAI 406.06, Notes on Use 7. Thus, the question before us here is whether there was substantial evidence of the elements of self-defense under either subsection 1 or 2 of Section 563.031.

The State argues even if Defendant did not use deadly force, she failed to present substantial evidence of two elements: (1) that she was not the initial aggressor, and (2) that

---

[6] The converse is also true: because someone uses an ordinary object, such as a broom handle, it does not necessarily follow that the person cannot use the object to exert deadly force. See MAI 406.06, Notes on Use 7 (discussing example of striking someone with a broom handle; noting "it may depend on whether or not death or serious injury resulted").

9

she had a reasonable belief she was in danger of the imminent use of unlawful force. First, on the issue of who was the initial aggressor, there was conflicting evidence in the record. Both Defendant and Complainant testified the other person started the confrontation, and Resident testified she could not remember. However, so long as some evidence tends to establish that Defendant was not the initial aggressor, even if other evidence contradicts it, Defendant is entitled to an instruction. Westfall, 75 S.W.3d at 280 ("If the evidence tends to establish the defendant's theory, or supports differing conclusions, the defendant is entitled to an instruction on it"). Here, Defendant's testimony provided substantial evidence that she was not the initial aggressor.

Second, regarding Defendant's belief that she needed to defend herself from the imminent use of unlawful force, the State argues there was no evidence Complainant had a weapon or had made a fist, and Complainant was not close enough to Defendant for any threat of force to be imminent. Viewing the evidence in the light most favorable to giving the requested self-defense instruction, Defendant testified that Complainant was yelling at her, threatening to "mollywock" her, and lunging at her. Defendant knew Complainant had previously been involved in physical altercations, and Defendant was unsure Resident could hold Complainant back given Resident's size and physical condition. While the video does not show Complainant, Complainant testified they were close enough to cause harm for at least part of the incident.

Given these circumstances along with evidence of Defendant's condition, that she did not have the use of half of her body, including impaired eyesight, a jury could find she reasonably feared the imminent use of unlawful force including assault, potentially causing serious physical injury. While it is also possible the jury could believe Complainant's

10

version of events or conclude from the evidence that the threat was not imminent, it was and is ultimately for a jury to decide. Defendant properly injected the issue of self-defense, and the trial court should have so instructed the jury. Point granted.

## Conclusion

We reverse the judgment of conviction for attempted unlawful use of a weapon and remand to the trial court.

_____
Gary M. Gaertner, Jr., J.

Rebeca Navarro-McKelvey, P.J., and
James M. Dowd, J., concur.