

# In the Missouri Court of Appeals
# Eastern District

### DIVISION ONE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED102962 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of Montgomery County |
| vs. | ) | 14AU-CR00460-02 |
| | ) | |
| RICHARD JOHN WHIPPLE, | ) | Honorable Wesley C. Dalton |
| | ) | |
| Appellant. | ) | Filed:  October 18, 2016 |

Richard John Whipple ("Defendant") appeals the judgment entered upon a jury verdict

convicting him of two counts of unlawful use of a weapon, one count of first-degree tampering

with a motor vehicle, and three counts of third-degree assault.  We reverse and remand.

### I.      BACKGROUND

**A.      Evidence Presented at Defendant's Jury Trial**

Defendant was charged with and convicted of the six counts referenced above, and he

does not challenge the sufficiency of the evidence to support his convictions.  Viewed in the light

most *favorable to Defendant*,[1] the evidence presented at his jury trial revealed the following

facts.

---

[1] As further explained below, one of the claims Defendant raises on appeal involves whether there was sufficient evidence adduced at trial to support a self-defense instruction.  When determining such an issue, this Court must view the evidence in the light most favorable to the defendant.  *State v. Amschler*, 477 S.W.3d 10, 13 (Mo. App. E.D. 2015).

On June 17, 2014, Defendant and his wife, Stephanie Whipple ("Mrs. Whipple"), along with three of their children (collectively "the Whipples"), drove to Jason Sanning Sr.'s home looking for their daughter's stolen bike. Upon the Whipples' arrival, Defendant parked his SUV on the street in front of the Sannings' property and Mrs. Whipple asked Alyssa Sanning ("Alyssa"),[2] a fifteen-year-old girl, whether she could look in their backyard for the bike. Alyssa gave Mrs. Whipple permission, and then went inside to tell her brother, fourteen-year-old Jason Sanning II. Jason Sanning II came outside as Mrs. Whipple was walking back to her vehicle and they had a verbal confrontation. Then, Defendant and his family returned to their home, which was connected to a pawn shop owned by Defendant.

Following this occurrence, Alyssa and Jason Sanning II went inside the house to inform Jason Sanning Sr. ("Mr. Sanning") of the incident between Mrs. Whipple and Jason Sanning II. After learning that the Whipples were on his property, Mr. Sanning, along with his girlfriend and daughter Alyssa (collectively "the Sannings"), drove to the Whipples' property to discuss what happened.

Upon the Sannings' arrival, an argument ensued between Mr. Sanning and Defendant. While the Sannings and the Whipples were in their respective vehicles, Defendant ordered Mr. Sanning to leave his property. Mr. Sanning did not comply with Defendant's request, causing Defendant to approach the Sannings' van. Mr. Sanning threatened Defendant with "a lot of bodily harm," and then Defendant asked Mr. Sanning to leave again. When Mr. Sanning still refused to comply, Defendant revealed his gun "to diffuse the situation." After Mr. Sanning continued to yell, Defendant told Mr. Sanning to get off his property for the third and final time.

---

[2] Because Alyssa shares the same last name as her brother and father, we will refer to Alyssa by her first name for clarity and ease of reference. No disrespect is intended.

Then, as Defendant was standing between the two vehicles, Mr. Sanning put the van in reverse to leave the Whipples' property. As the Sannings' van backed up, its front end veered towards Defendant and his vehicle, who became fearful that he, his family, or his vehicle were going to be struck by the Sannings' van. In response, Defendant fired a single round into the hood of the Sannings' van. Immediately after the shot was fired, Mr. Sanning stopped, put the van in drive, and drove out of the parking lot.[3]

## B. Relevant Procedural Posture

Based on the events which occurred at the Whipples' property, Defendant was charged with six counts. Count I is a class D felony charge for unlawful use of a weapon relating to Defendant's brandishing the firearm. Counts II – VI relate to Defendant's firing the gun at the Sannings' van: Count II is a class B felony charge for unlawful use of a weapon; Count III is a charge for first-degree tampering with a motor vehicle; and Counts IV – VI are third-degree assault charges relating to Mr. Sanning, Alyssa, and Mr. Sanning's girlfriend, respectively.

During the instruction conference, Defendant's counsel ("Defense Counsel") requested the jury be instructed on self-defense as to Count I. Defense Counsel did not tender instructions or specify which Missouri Approved Instruction ("MAI") Defendant was requesting. The State objected to any instruction on self-defense. Following arguments from the parties, the trial court ruled the evidence was not sufficient to support a self-defense instruction. Defense Counsel made a "blanket objection" to the lack of instructions on self-defense, defense of others, and duty to retreat so as to preserve the objections for each count.

The jury found Defendant guilty of all counts. Defendant filed a Motion for New Trial asserting, *inter alia*, the trial court erred in refusing to instruct the jury on self-defense, defense

---

[3] To avoid unnecessary repetition, a more detailed account of the facts will be set out in our analysis in Sections II.A.4.a. and b. below.

3

of others, and duty to retreat. Following arguments from the parties, the trial court denied Defendant's Motion for New Trial.

The trial court subsequently entered a judgment in accordance with the jury's verdict, and sentenced Defendant as a prior offender to fifteen years of imprisonment as to Count II, over Defense Counsel's objection, who argued its imposition violated Defendant's due process rights. Defendant was further sentenced to four years of imprisonment for Counts I and III and one year in the county jail for Counts IV – VI, with all sentences to run concurrently. Defendant appeals.

## II.    DISCUSSION

In Defendant's first and second points on appeal, he argues the trial court erred in refusing to submit jury instructions relating to Defendant's claim of self-defense. Defendant asserts in his third point that the trial court erred in sentencing him as a prior offender, arguing that Missouri's prior offender statute is unconstitutional.

## A.    Whether the Trial Court Erred in Refusing to Submit a Self-Defense Instruction

In his first and second points on appeal, Defendant argues the trial court erred in refusing to submit jury instructions relating to Defendant's claim of self-defense. Defendant asserts he was entitled to a self-defense instruction solely because he had no duty to retreat on his property. Defendant also argues that he was entitled to a self-defense instruction because he presented substantial evidence that he acted in self-defense or defense of others. We reject Defendant's first argument, but agree that Defendant was entitled to a self-defense instruction because he placed the matter at issue, which amounted to substantial evidence to support submitting a self-defense or defense-of-others instruction.

### 1.    Standard of Review

This Court reviews a trial court's refusal to give a requested jury instruction de novo. *State v. Amschler*, 477 S.W.3d 10, 13 (Mo. App. E.D. 2015). Even if a self-defense instruction is

4

not requested or was requested but not in the proper form, the trial court must instruct the jury on self-defense if there is substantial evidence to support it. *State v. Westfall*, 75 S.W.3d 278, 280-81, 281 n. 9 (Mo. banc 2002); *State v. Seals*, 487 S.W.3d 18, 23 (Mo. App. S.D. 2016). "Substantial evidence" means evidence putting the matter in issue. *State v. Avery*, 120 S.W.3d 196, 200 (Mo. banc 2003) (quotations in original). In determining whether there was substantial evidence to support a self-defense instruction, we view the evidence and reasonable inferences therefrom in the light most favorable to the defendant and "the theory propounded by [d]efendant." *Amschler*, 477 S.W.3d at 13 (quoting *Westfall*, 75 S.W.3d at 280). If the evidence tends to establish the defendant's theory of self-defense, or supports differing conclusions, the defendant is entitled to a self-defense instruction. *Avery*, 120 S.W.3d at 200; *Seals*, 487 S.W.3d at 23. It is reversible error to refuse to instruct on self-defense if substantial evidence exists to support the instruction. *State v. Weems*, 840 S.W.2d 222, 226 (Mo. banc 1992).

## 2. Defendant's Argument Relating to Duty to Retreat

As an initial matter, we will address Defendant's argument that he was entitled to a self-defense instruction solely because he had no duty to retreat on his property. In response, the State asserts that even when a defendant does not have a duty to retreat, his claim of self-defense still must meet the reasonableness requirements of section 563.031 RSMo Supp. 2011[4] in order for him to be entitled to a self-defense instruction. For the reasons stated below, we agree with the State's position.

---

[4] Unless otherwise indicated, all further statutory references to section 563.031 are to RSMo Supp. 2011, which incorporates legislative amendments through 2010 and was the version in effect at the time the events giving rise to Defendant's charges occurred. Section 563.031 was subsequently amended, but those amendments do not go into effect until October 14, 2016 and are not relevant to this appeal.

### a. General Law Relating to Statutory Interpretation

Defendant's assertion that he was entitled to a self-defense instruction solely because he had no duty to retreat requires us to interpret section 563.031. Statutory interpretation is a question of law that this Court reviews de novo. *Finnegan v. Old Republic Title Co. of St. Louis, Inc.*, 246 S.W.3d 928, 930 (Mo. banc 2008). "The primary rule of statutory interpretation is to ascertain the intent of the General Assembly from the language used and to give effect to that intent." *Id*. To determine legislative intent, words are to be given their plain and ordinary meaning. *Id*. The construction of statutes should not be hyper-technical, but should be reasonable and logical. *Gash v. Lafayette County*, 245 S.W.3d 229, 232 (Mo. banc 2008). We do not read any part of the statute in isolation, but consider the context of the entire statute and harmonize its provisions. *Berra v. Danter*, 299 S.W.3d 690, 696 (Mo. App. E.D. 2009).

### b. General Law Relating to the "Castle Doctrine" and Duty to Retreat

In 2007, the Missouri General Assembly repealed the statute relating specifically to defense of premises and incorporated provisions relating to that defense into section 563.031, the self-defense statute.[5] Subsequent amendments further expanded on the new provisions.[6] The effect of these amendments was to create the so-called "castle doctrine" and to relieve a defender of his "duty to retreat" in certain circumstances. *State v. Clinch*, 335 S.W.3d 579, 587 (Mo. App. W.D. 2011); *see* section 563.031.3.

Today, this Court finds it necessary to clarify how the statute operates in its current form. We begin with the language of section 563.031, which provides in relevant part:

> 1. A person may, *subject to the provisions of subsection 2 of this section*, use physical force when and to the extent he or she reasonably believes such force to be necessary to defend himself or herself or a third person from what he or she reasonably believes to be the use or imminent use of unlawful force by such other person….

---

[5] *Compare* section 563.031 RSMo Supp. 2008, *with* section 563.031 RSMo 2000, *and* section 563.036 RSMo 2000.
[6] *Compare* section 563.031 RSMo Supp. 2011, *with* section 563.031 RSMo Supp. 2008.

…

2. A person may not use deadly force upon another person *under the circumstances specified in subsection 1 of this section* unless:

…

(2) Such force is used against a person who unlawfully enters, remains after unlawfully entering, or attempts to unlawfully enter a dwelling, residence, or vehicle lawfully occupied by such person; or

(3) Such force is used against a person who unlawfully enters, remains after unlawfully entering, or attempts to unlawfully enter private property that is owned or leased by an individual claiming a justification of using protective force under this section.

3. A person does not have a duty to retreat from a dwelling, residence, or vehicle where the person is not unlawfully entering or unlawfully remaining. A person does not have a duty to retreat from private property that is owned or leased by such individual.

(emphasis added).

The italicized language in the statute indicates subsections 1 and 2 must be read together to determine when deadly force may be used in self-defense. *Clinch*, 335 S.W.3d at 586. According to the introductory language of subsections 1 and 2, subsection 1 is not always qualified by subsection 2 because subsection 2 only applies when deadly force is used, but subsection 2 is always qualified by the reasonableness requirements of subsection 1. *Id.* Thus, pursuant to the statute, the lawful occupier of a dwelling, residence, or vehicle ("the occupier"), or an owner or lessee of private property ("the owner or lessee") is entitled to use deadly force to repel an unlawful entry, but only if he meets the requirements of self-defense set out in section 563.031.1. *See Clinch*, 335 S.W.3d at 586 ("to use deadly force under [section 563.031.2], the requirements of [section 563.031.1] must also be met; otherwise, deadly force is prohibited"); *see also Amschler*, 477 S.W.3d at 13-14 (deadly force requirements are "in addition" to section 563.031.1 requirements).

While a defender is always required to do all within his power and consistent with his safety to avoid the danger and the need to use force, *see State v. Henderson*, 311 S.W.3d 411,

7

414-15 (Mo. App. W.D. 2010), section 563.031.3 relieves him of his duty to retreat in certain circumstances while present in a dwelling, residence, vehicle, or on private property. *See* section 563.031.3. However, unlike subsections 1 and 2, subsection 3 does not state how it operates in conjunction with other provisions of the statute. Although section 563.031.3 does not explicitly address how the duty to retreat interacts with the other statutory requirements, the statute does not state, and it does not follow, that the removal of one's duty to retreat under certain circumstances constitutes the removal of the reasonableness requirements of sections 563.031.1 and .2. The legislature did not express its intention that section 563.031.3 circumvent sections 563.031.1 and .2, and we will not imply additional words into a statute. *See Vocational Services, Inc. v. Developmental Disabilities Resource Bd.*, 5 S.W.3d 625, 631 (Mo. App. W.D. 1999). Further, the inclusion of "subject to the provisions of subsection 2 of this section" and "under the circumstances specified in subsection 1 in this section" in sections 563.031.1 and .2 evidences that the legislature had language referring to other provisions available, and intended not to use similar language in section 563.031.3. *See Schudy v. Cooper*, 824 S.W.2d 899, 901 (Mo. banc 1992) (the legislature's express inclusion of one thing implies exclusion of another).

Accordingly, considering the entirety of section 563.031 and reading it reasonably and logically, we find that subsection 3 permits the occupier, owner, or lessee to use physical force, including deadly force, in self-defense within a dwelling, residence, or vehicle, or on private property without having a duty to retreat, but only under the circumstances in which physical force, or deadly force, is allowed under subsections 1 and 2. Thus, we cannot find that subsection 3 gives the occupier, owner, or lessee authority to stand his ground and use deadly force without having a reasonable belief that such force is necessary to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful force.

8

Although the interaction between subsection 3 and other provisions of section 563.031 is a matter of first-impression, our interpretation finds support from other Missouri Court decisions discussing duty to retreat under prior versions of section 563.031. Specifically, the Western District has declared, "a person who is attacked in his own dwelling has a right to stand his ground rather than retreat, if this is necessary to save his own life or to protect himself from serious physical harm." *State v. Abdul-Khaliq*, 39 S.W.3d 880, 887 (Mo. App. W.D. 2001) (quoting *State v. Allison*, 845 S.W.2d 642, 647 (Mo. App. W.D. 1992)). Additionally, the Southern District has analyzed the duty to retreat within the context of the reasonableness requirements for self-defense. *State v. Wiley*, 337 S.W.3d 41, 45, 45 n.7 (Mo. App. S.D. 2011) ("[a]side from issues of deadly force under [section] 563.031.2, a person has no duty to retreat from his residence"). Moreover, the *Wiley* Court found an occupier's duty to retreat was not dispositive of the case because the defendant failed to prove that he met other prerequisites for using self-defense. *Id.* We presume the legislature was aware of the Western and Southern Districts' interpretations of prior versions of the statute. *Clinch*, 335 S.W.3d at 587. Thus, the fact that the legislature has not amended subsection 3 to mention necessity or eliminate the other prerequisites of self-defense further influences this Court's conclusion regarding the interpretation of section 563.031. *See id.*

Finally, our reading of section 563.031 is supported by MAI-CR 3d 306.11 (effective January 1, 2011)[7] regarding self-defense in dwellings, residences, and vehicles, which provides in relevant part:

> A person who is lawfully occupying a [dwelling, residence, or vehicle] may use (force, including) deadly force (,) to defend himself against another who [attempts to enter unlawfully, enters unlawfully, or remains after an unlawful entry of] that [dwelling, residence, or vehicle] if he reasonably believes the use of some force is necessary to defend himself from what he reasonably believes is the (imminent) use of unlawful force.

---

[7] All further references to MAI-CR 3d 306.11 are to the version effective January 1, 2011.

...

A person lawfully occupying a [dwelling, residence, or vehicle] is not required to retreat before resorting to the use of force to defend himself.

(internal parentheticals modified).

Based upon this language, which is to be given in all cases where MAI-CR 3d 306.11 is given, (1) the occupier may lawfully use force, including deadly force, to defend himself against a person who is attempting to enter unlawfully, does enter unlawfully, or remains after an unlawful entry; and (2) the occupier is relieved of any duty to retreat before resorting to the use of force; (3) but for the occupier to claim the privilege of self-defense, he must reasonably believe the use of force is necessary to defend himself from what he reasonably believes is an imminent use of force. *See id*.

### c. Conclusion as to Defendant's Argument Relating to Duty to Retreat

The preceding discussion indicates that even when a defendant does not have a duty to retreat, he must show he was entitled to use deadly force in self-defense under the reasonableness requirements of section 563.031.1 in order for him to be entitled to a self-defense instruction. While the law relieves an occupier, owner, or lessee of his duty to retreat, it does not provide him a right to stand his ground and use deadly force without the use of force being necessary to save his own life or protect himself from serious physical harm. *See Abdul-Khaliq*, 39 S.W.3d at 887. Based on the foregoing, Defendant's argument that he was entitled to a self-defense instruction solely because he had no duty to retreat on his property is without merit.

### 3. General Law Relating to Self-Defense Jury Instructions

As Defendant's argument relating to duty to retreat is not dispositive of whether he was entitled to a self-defense instruction, we now address his primary argument – that he was entitled to such an instruction because he presented substantial evidence that he acted in self-defense or

10

defense of others.[8]

A defendant must prove the existence of four prerequisites in order for him to have been entitled to use force in self-defense. *State v. Chambers*, 671 S.W.2d 781, 783 (Mo. banc 1984); *State v. Habermann*, 93 S.W.3d 835, 837 (Mo. App. E.D. 2002). Specifically, a defendant must present substantial evidence that, (1) he did not provoke or was not the aggressor; (2) he had reasonable grounds for believing he was faced with immediate danger of serious bodily harm; (3) he did not use more force than was reasonably necessary; and (4) he did everything in his power and consistent with his own safety to avoid the danger. *Habermann*, 93 S.W.3d at 837; *Seals*, 487 S.W.3d at 23-24.

The use of deadly force[9] is justified only when the defender reasonably believes deadly force is necessary to protect himself or another from immediate danger of death or serious bodily harm. *State v. Crudup*, 415 S.W.3d 170, 175-76 (Mo. App. E.D. 2013). A reasonable belief is "a belief based on reasonable grounds, that is, grounds that could lead a reasonable person in the same situation to the same belief." *State v. Smith*, 456 S.W.3d 849, 852 (Mo. banc 2015) (quoting MAI-CR 3d 306.06A[6] (effective January 1, 2009)).

### 4.    Analysis

Defendant asserts he was entitled to self-defense instructions on each of his six charges. Therefore, Count I, relating to Defendant's brandishing of the firearm will be discussed first.

---

[8] At the instruction conference, Defense Counsel objected to the trial court's refusal to give a self-defense instruction and a defense-of-others instruction. However, Defendant's point relied on only refers to self-defense and does not refer to defense-of-others. Additionally, the argument section of Defendant's brief only refers to defense-of-others in the context of his argument relating to self-defense. Accordingly, and because defense-of-others is essentially an extension of the self-defense justification, *Bolden v. State*, 423 S.W.3d 803, 806, 806 n. 4 (Mo. App. E.D. 2013), our analysis will focus on self-defense, and will only refer to defense-of-others in the context of our discussion relating to self-defense.

[9] The parties do not dispute that by brandishing and discharging a firearm, Defendant used deadly force against Mr. Sanning.

Then, Counts II through VI will be discussed together as they all relate to Defendant's actions in firing the gun at the Sannings' van.

### a. Defendant's Brandishing of the Firearm

Viewing the evidence and reasonable inferences therefrom in the light most favorable to Defendant, which we are required to do, *Amschler*, 477 S.W.3d at 13, the following transpired.

After the incident between Mrs. Whipple and Jason Sanning II on the Sannings' property, the Whipples returned to their property, believing the encounter was over. Approximately three minutes after the Whipples left the Sannings', the Sannings arrived at the Whipples'. The exact position of the vehicles is disputed, but Defendant and Mrs. Whipple testified that the Sannings' van pulled into the Whipples' parking lot at an angle from the street. The vehicles were parked approximately three feet from each other, and were not perfectly parallel. Both families remained in their vehicles when Mr. Sanning asked Defendant whether he had threatened Jason Sanning II. Defendant denied threatening Jason Sanning II, and "cuss words were exchanged" between Defendant and Mr. Sanning. Mr. Sanning yelled at Defendant and threatened him with "a lot of bodily harm."

While Defendant was still in his vehicle, Defendant asked Mr. Sanning to leave his property. When Mr. Sanning refused, Defendant got out of his vehicle. Defendant approached the passenger side window of the Sannings' van while Mr. Sanning was still yelling at him. Defendant yelled back and again told Mr. Sanning to leave his property. In an attempt to "diffuse the situation," Defendant pulled out his gun, without pointing it at anyone, in an "overexaggerated" [sic] manner believing, "if [Mr. Sanning] saw the gun [the Sannings] would go ahead and leave."

As explained below, Defendant produced substantial evidence of the four requirements of self-defense, sufficient to place the matter at issue to warrant a self-defense jury instruction.

12

First, Defendant presented substantial evidence of the absence of provocation or aggression on his part. *See Habermann*, 93 S.W.3d at 837. The parties dispute whether the argument on the Whipples' parking lot was an isolated incident or whether it began with Mrs. Whipple entering the Sannings' property. Defendant testified that upon leaving the Sannings' property, he drove around the block to avoid driving past the Sannings' property on his way home and to avoid further confrontation, and that he believed the incident was over when he arrived at his house. Accordingly, Defendant asserts that the confrontation on his property was an isolated incident, and that Mr. Sanning became the aggressor when he arrived on the Whipples' parking lot uninvited and remained after Defendant asked him to leave. Where, as in this case, there were arguably acts of aggression or provocation by both Defendant and Mr. Sanning, and it is for the jury to determine which party had been the initial aggressor. *See Chambers*, 671 S.W.2d at 783.

Next, Defendant produced substantial evidence that he had reasonable grounds for believing he or his family was facing an immediate danger of death or serious bodily harm. *See Habermann*, 93 S.W.3d at 837; *see also Crudup*, 415 S.W.3d at 175-76. The reasonableness of Defendant's belief itself is a question of fact for the jury to determine. *Amschler*, 477 S.W.3d at 14; *Chambers*, 671 S.W.2d at 783. Viewing the whole record in the light most favorable to Defendant, we find the testimony that Mr. Sanning was on the Whipples' property uninvited, refused to leave upon two requests, and threatened Defendant with bodily harm[10] was substantial evidence from which a jury could find that Defendant reasonably believed he or his family was facing an immediate danger of death or serious bodily harm. *See Amschler*, 477 S.W.3d at 14;

---

[10] This Court is aware that, generally, insults or verbal threats alone are not sufficient to justify deadly force, *see Wiley*, 337 S.W.3d at 45 (insults are not sufficient provocation to justify an assault, and even a simple assault and battery does not justify the use of deadly force), and nothing in this opinion should be read to suggest otherwise. However, because we do not know the exact substance of Mr. Sannings' threats and we must take the facts in the light most favorable to Defendant, *Amschler*, 477 S.W.3d at 13, we consider the alleged threats as one of several factors leading to Defendant's belief that the use of deadly force was necessary.

*Chambers*, 671 S.W.2d at 782 (where evidence is conflicting, it is a question of fact for the jury to determine whether the defendant acted in self-defense).

Further, Defendant's testimony amounted to substantial evidence that he used no more force than reasonably necessary to protect himself and his family and that he did everything within his power and consistent with his and his family's safety to avoid the danger. *See Habermann*, 93 S.W.3d at 837. As there was conflicting evidence concerning these two elements, the determination of whether they are met lies within the sound discretion of the jury. *See State v. Miller*, 91 S.W.3d 630, 635 (Mo. App. W.D. 2002) (when conflicting evidence existed as to one of the prerequisites of self-defense, the issue was within the sound discretion of the jury).

Accordingly, we find that Defendant presented substantial evidence that he acted in self-defense or defense of others in brandishing his firearm in response to the encounter with Mr. Sanning. Based on the foregoing, the trial court erred in refusing to instruct the jury on self-defense as to Count I.

### b. Defendant's Discharging the Firearm at the Sannings' Van

We now turn to whether Defendant was entitled to a self-defense instruction on Counts II – VI, which all relate to Defendant's actions in discharging his firearm at the Sannings' van. The remainder of the incident happened as follows.

After Defendant showed his gun to the Sannings, he put the gun back at his hip. Mr. Sanning continued to yell and scream at Defendant. For the third and final time, Defendant told Mr. Sanning to "get the f--- off [Defendant's] property now," and Mr. Sanning responded, "you had it [sic]." Then, Mr. Sanning shifted his van into gear and began to back up at a rapid pace. According to Defendant's testimony, the van's front end veered towards where Defendant was standing. Defendant believed he was about a foot away from being hit by the Sannings' van.

14

Allegedly to avoid being hit by the van, Defendant stepped back. Defendant thought the Sannings' van was going to hit Defendant's vehicle, where his family was located, so he shot the hood of the Sannings' van. The Sannings' van stopped immediately, and Defendant moved in front of his vehicle. Then, the Sannings' van proceeded forward and out of the Whipples' parking lot, onto a busy street. Defendant called the police as the Sannings' van was exiting his parking lot.

At this point, we find it important to note that there is a dispute as to the events occurring between Defendant's brandishing his firearm and discharging it, specifically as to the location and movement of the Sannings' van. However, "[w]here there is conflicting evidence concerning the issue of self-defense, the instruction must be given." *Id*. at 636 (citing *Weems*, 840 S.W.2d at 227 and *Allison*, 845 S.W.2d at 646). Moreover, we find that Defendant produced substantial evidence, sufficient to put the four requirements of self-defense in issue to warrant a self-defense jury instruction. *See Avery*, 120 S.W.3d at 200.

First, Defendant presented substantial evidence to show the absence of provocation or aggression on his part. *See Habermann*, 93 S.W.3d at 837. As previously explained, Defendant presented evidence that, regardless of whether there were one or two incidents involved, he was not the initial aggressor in the incident on his property. The credibility of this evidence, specifically, Defendant's testimony, is for the jury to determine. *See id*. at 838.

Next, Defendant produced substantial evidence that he had reasonable grounds for believing he or his family was facing an immediate danger of death or serious bodily harm. *See id*. at 837; *see also Crudup*, 415 S.W.3d at 175-76. There was substantial evidence adduced at Defendant's trial from which a jury could find that a reasonable person in Defendant's position could have believed that he or his family were facing a threat of death or serious bodily harm from Mr. Sanning's threats combined with the movement of the Sannings' van. *See Smith*, 456

15

S.W.3d at 852; *see also State v. Edwards*, 60 S.W.3d 602, 612 (Mo. App. W.D. 2001) (the facts are viewed as they appeared to the defendant, but the defendant's conduct is measured against what an ordinary, reasonably prudent person would have believed and how they would have reacted). Although there was much dispute at trial over the location and movement of the two vehicles, self-defense was placed at issue before the jury because of the conflicting evidence or differing inferences that could reasonably be drawn from that evidence. *Wiley*, 337 S.W.3d at 46, 46 n.8. As Defendant testified that he feared for his safety and his family's safety when the Sannings' van reversed in a rapid pace veering towards Defendant and his vehicle which had his family inside, the reasonableness of this belief is a question of fact to be decided by a jury. *See Amschler*, 477 S.W.3d at 14.

Further, Defendant presented substantial evidence to show that he used no more force than reasonably necessary to protect himself and his family. *See Habermann*, 93 S.W.3d at 837. In this case, where the Sannings' van was just one foot away from Defendant and three feet from Defendant's vehicle, a jury could find it reasonable that Defendant believed Mr. Sanning would use his van as a potential weapon, and "one that could quickly close the distance gap" between Defendant or his family and the Sannings' van. *See Amschler*, 477 S.W.3d at 14. Therefore, a jury could find that Defendant was justified in meeting this apparent threat with deadly force. *See id*.

Finally, substantial evidence existed that Defendant did everything within his own power and consistent with his and his family's safety to avoid the danger. *See Habermann*, 93 S.W.3d at 837. In this case, Defendant testified that he asked Mr. Sanning to leave his property three times prior to shooting at the Sannings' van. Mr. Sanning continued to yell and threaten Defendant. Although it is possible Defendant could have chosen a different course of conduct than discharging his firearm, "the reasonableness of such other conduct would be within the

16

sound discretion of the jury." *Chambers*, 671 S.W.2d at 783-84. From Defendant's testimony, there was substantial evidence from which a jury could conclude that the actions taken by Defendant were all that were required of him to avoid the danger before he was permitted to use deadly force. *See Miller*, 91 S.W.3d at 636 (although improbable, there was evidence to support the defendant's theory of self-defense and it was for the jury to determine whether the defendant did all that was within his power to avoid the danger).

Accordingly, we find that Defendant presented substantial evidence that he acted in self-defense or defense of others in discharging his firearm at the Sannings' van. Based on the foregoing, the trial court erred in refusing to instruct the jury on self-defense as to Counts II – VI. Points one and two are granted.[11]

**B.      Whether the Trial Court Erred in Sentencing Defendant Pursuant to Missouri's Prior Offender Statute**

In his third and final point on appeal, Defendant argues the trial court erred in sentencing him as a prior offender. Defendant specifically maintains section 558.016 RSMo Supp. 2006,[12] Missouri's prior offender statute, is unconstitutional because it allows an individual to be sentenced as a prior offender based on a previous finding of guilt and suspended imposition of sentence ("SIS"). We consider the merits of this point because it involves a matter which may arise on retrial.

---

[11] We note that in Defendant's point two, Defendant alternatively seems to argue he was entitled to a separate jury instruction regarding duty to retreat even though there is not an MAI instruction solely for duty to retreat. We find this argument has no merit because, consistent with our interpretation of section 563.031 set out in Section II.A.2. above, the appropriate jury instruction to be given on remand of this case would be a modified version of MAI-CR 3d 306.11, which encompasses *both* self-defense and duty to retreat. A modification would be necessary because MAI-CR 3d 306.11 covers self-defense in dwellings, residences, and vehicles, and has not been updated to comply with the 2011 amendments to section 563.031 relating to private property. *See Edwards*, 60 S.W.3d at 612 (where the law covered by an MAI has been materially altered by statute, the trial court must modify the MAI instruction to follow the change in the law).

[12] All further statutory references to section 558.016 are to RSMo Supp. 2006, which incorporates legislative amendments through 2005 and is the latest version of the statute.

17

### 1.     Jurisdiction

This Court has a duty of examining our jurisdiction in every case.  *Sharp v. Curators of University of Missouri*, 138 S.W.3d 735, 737 (Mo. App. E.D. 2003).  Under article V, section 3 of the Missouri Constitution, the Missouri Supreme Court has exclusive appellate jurisdiction over all cases challenging the validity of a statute.  *Glass v. First Nat. Bank of St. Louis, N.A.*, 186 S.W.3d 766, 766 (Mo. banc 2005).  However, a mere assertion that a statute is unconstitutional will not divest this Court of jurisdiction.  *Id*.  If the constitutional claim is merely colorable, not real and substantial, we may review it.  *Dubinsky v. St. Louis Blues Hockey Club*, 229 S.W.3d 126, 131 (Mo. App. E.D. 2007).  To determine whether a constitutional claim is real and substantial, this Court must make a preliminary inquiry as to whether it presents a contested matter of right involving a fair doubt and reasonable room for disagreement.  *Id*.  A claim is merely colorable if our inquiry reveals the claim is so legally and factually insubstantial that it is plainly without merit.  *Id*.

After completing a preliminary inquiry into Defendant's constitutional challenge to section 558.016, we find the claim is merely colorable, because it is so legally and factually insubstantial that it is plainly without merit.  *See id*.  Accordingly, this Court has jurisdiction over Defendant's claim that section 558.016 is unconstitutional.

### 2.     Standard of Review

Defendant asks this Court to grant plain error review over his claim that section 558.016 is unconstitutional.  Plain error review is appropriate here because the Defendant failed to bring this challenge in his Motion for New Trial.  *See State v. Walter*, 479 S.W.3d 118, 123 (Mo. banc 2016) (to preserve a claim of error for appeal, the appellant must both object to the alleged error at trial and to raise the objection in his motion for new trial).  Where an appellant fails to preserve a constitutional challenge, this Court may still hear such a claim pursuant to Rule

18

30.20.[13] *In Interest of J.T.*, 447 S.W.3d 212, 215 (Mo. App. E.D. 2014). Rule 30.20 grants this Court authority to consider "plain errors" by a trial court affecting a party's substantial rights. *Id.*

Under plain error review, we will only grant a defendant relief if we find an error occurred, which affected his rights so substantially that a manifest injustice or miscarriage of justice resulted. *State v. McKay*, 411 S.W.3d 295, 304 (Mo. App. E.D. 2013). Plain errors are those which are evident, obvious, and clear, and our Court determines whether such errors exist based on the circumstances of each case. *Id*. at 304-05. The defendant has the burden of demonstrating a manifest injustice or miscarriage of justice resulted from the alleged error. *Id*. at 304. A claim that a statute is unconstitutional is reviewed de novo. *Rentschler v. Nixon*, 311 S.W.3d 783, 786 (Mo. banc 2010). A statute is presumed valid and will not be invalidated unless it clearly contravenes a constitutional provision. *Id.*

### 3. General Law Relating to Defendant's Claim and Analysis

As an initial matter, Defendant was properly charged as a prior offender under section 558.016. Pursuant to the statute, "a prior offender is one who has pleaded guilty to or has been found guilty of one felony." Section 558.016.2 (internal quotations omitted). A final judgment or conviction is not required for a defendant to be sentenced as a prior offender under the statute. *State v. Pond*, 131 S.W.3d 792, 795 (Mo. banc 2004); *State v. Talkington*, 25 S.W.3d 657, 658 (Mo. App. S.D. 2000). After a jury trial in 2002, Defendant was found guilty of the class C felony of second-degree assault. The trial court judge suspended imposition of sentence and placed Defendant on probation, which he subsequently completed. Based on this previous finding of guilt, Defendant fell within the definition of a "prior offender." *See* section 558.016.2; *see also Talkington*, 25 S.W.3d at 658.

---

[13] All further references to Rules are to Missouri Supreme Court Rules (2016).

Turning now to the merits of Defendant's claim, he argues that section 558.016 is unconstitutional because it allows sentencing as a prior offender based on a previous finding of guilt and SIS. Defendant asserts he has been deprived of due process of law because there may have been an error in his previous finding of guilt, which he had no recourse against because an SIS is not an appealable final judgment. For the reasons discussed below, we disagree.

Missouri Courts adhere to the final judgment rule, which provides for a right of appeal only from final judgments. *State v. Dunn*, 438 S.W.3d 533, 534 (Mo. App. E.D. 2014). In a criminal case, the judgment becomes final when a judgment and sentence are entered. *Id*. Thus, where imposition of sentence is not entered, but is suspended, there is no final judgment and the defendant may not appeal. *Id*. In that case, the defendant's only remedy is by extraordinary writ. *State v. Moore*, 352 S.W.3d 392, 398 (Mo. App. E.D. 2011); *State v. Hotze*, 250 S.W.3d 745, 746-47 (Mo. App. E.D. 2008).

This Court is not persuaded by Defendant's seemingly hypothetical argument that there *may* have been error in his previous finding of guilt. We find it important to note that Defendant has failed to allege any actual error or meritorious challenge to his prior finding of guilt. Moreover, Defendant's assertion that he would have had no recourse if there had been an error with his previous finding of guilt is incorrect. Defendant has not provided case law supporting this proposition, and our precedent reveals Defendant could have sought relief from his SIS through an extraordinary writ. *See id*. Accordingly, we find that Defendant's argument that section 558.016 is unconstitutional is plainly without merit.

Based on the foregoing, the trial court did not err in sentencing Defendant as a prior offender. Point three is denied.

20

## III.    CONCLUSION

The trial court's judgment is reversed and remanded.

_____
ROBERT M. CLAYTON III, Presiding Judge

Mary K. Hoff, J., and
Lisa P. Page, J., concur.