

# SUPREME COURT OF MISSOURI
## en banc

STATE OF MISSOURI,⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀Respondent,⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀No. SC99170
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
ANDREA SHAUNTE STRAUGHTER,⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀Appellant.⠀⠀⠀⠀⠀⠀⠀⠀)

*Opinion issued April 26, 2022*

### APPEAL FROM THE CIRCUIT COURT OF ST. LOUIS CITY
The Honorable Bryan L. Hettenbach, Judge

Andrea Straughter appeals her judgments of conviction after a jury found her guilty of assault and armed criminal action. Straughter argues the circuit court erred in refusing to give the "castle doctrine" self-defense jury instruction she requested. This Court finds substantial evidence existed to support giving a castle doctrine instruction and the circuit court erred in failing to give an instruction. Because the failure to submit such an instruction to the jury prejudiced Straughter, the circuit court's judgment is vacated, and the case is remanded for further proceedings.

## Factual and Procedural History[1]

On May 17, 2018, Straughter was at her home with an old acquaintance, Nicholas Ward. Earlier Ward had received multiple text messages and calls from his ex-girlfriend, Markysha Randell. Ward turned off his phone. Soon after, Straughter began receiving calls from a blocked number. Ward believed the blocked number belonged to Randell. Ward called Randell in Straughter's presence. Ward told Randell to stop calling Straughter, and arguments and threats ensued. Following the call, Ward stormed out of Straughter's home. Later that day, Ward, who had loaned his vehicle to Straughter, asked Straughter for a ride. Straughter agreed but did not know where she was taking Ward until they arrived at Randell's home.

When Straughter and Ward arrived, Randell exited the home with a handgun. Randell cocked the gun, pointed it in the air, waved it around, and said "everybody about to leave with some hot lead in they [sic] ass today." Randell's sister, Shereka Jenkins-Finnie, stood in the street outside Randell's home. Ward, who was also armed with a handgun, exited the vehicle, but left his gun in the passenger's seat. Ward told Randell "if you put your hands on it, that will be the day I set fire at [sic] you." Randell took the magazine out of her gun, removed the bullet from the chamber, and told Jenkins-Finnie to put the gun in the trunk of a nearby parked vehicle. Jenkins-Finnie did so, but the vehicle's

---

[1] This Court recites the evidence "in the light most favorable to the defendant" and submitting the requested instruction. *State v. Bruner*, 541 S.W.3d 529, 534 (Mo. banc 2018).

trunk remained open. While Ward and Randell argued in front of Randell's home, Straughter remained in Ward's vehicle.

Randell then approached Straughter as she sat in the driver's seat of the vehicle. Randell asked why she brought Ward to the house. Straughter replied that she did not have to explain herself. Randell then thrust her arm through the open car window and punched Straughter in the face. As Randell punched Straughter, Jenkins-Finnie, armed with a gun, ran toward Ward's vehicle. Straughter hastily retrieved Ward's gun from the passenger seat and, without aiming, fired the gun at least twice. The first shot hit Randell in the abdomen.[2] Randell then grabbed the vehicle's door and slid to the ground, remaining near Straughter on the driver side. Straughter began to drive away and fired another shot that hit Jenkins-Finnie in the foot.

The State charged Straughter with two counts of first-degree assault and two counts of armed criminal action. The case proceeded to a jury trial. At a hearing discussing how the circuit court would instruct the jury, Straughter requested two separate self-defense instructions, one generally justifying the use of physical force in self-defense,[3] and the other justifying the use of deadly force by a person lawfully in a vehicle, commonly referred to as the castle doctrine.[4] The State objected to the castle doctrine instruction, contending Randell was no longer in the vehicle when Straughter fired the gun and Straughter did not have the right to defend herself under the castle doctrine once Randell

---

[2] Randell suffered serious injuries but survived.
[3] This instruction was patterned after MAI-CR 4th 406.06.
[4] This instruction was patterned after MAI-CR 4th 406.10.

exited the vehicle. The circuit court refused the castle doctrine instruction but gave the general self-defense instruction. The jury found Straughter guilty on all counts, and the circuit court sentenced Straughter to 10 years of imprisonment.[5]

**Analysis**

"This Court reviews *de novo* a trial court's decision whether to give a requested jury instruction." *Bruner*, 541 S.W.3d at 534 (quotation marks omitted). "In determining whether the circuit court erred in refusing to submit an instruction on self-defense, the evidence is viewed in the light most favorable to the defendant" and submitting the requested instruction. *Id.* at 530, 534. A defendant is entitled to a self-defense instruction if substantial evidence and the reasonable inferences drawn therefrom support the theory propounded in the requested instruction. *State v. Barnett*, 577 S.W.3d 124, 126 (Mo. banc 2019); *State v. Westfall*, 75 S.W.3d 278, 280 (Mo. banc 2002). "Sufficient substantial evidence is provided if there is evidence putting a matter in issue." *Bruner,* 541 S.W.3d at 535 (quotation marks omitted). "If the evidence tends to establish the defendant's theory, or supports differing conclusions, the defendant is entitled to an instruction on it." *Westfall*, 75 S.W.3d at 280. This Court will vacate a criminal conviction if there is error in failing to submit a self-defense instruction resulting in prejudice to the defendant. *Id.*

The general statutory right of self-defense allows a person to "use physical force upon another person when and to the extent he or she reasonably believes such force to be

---

[5] This Court has jurisdiction over Straughter's appeal pursuant to article V, section 10 of the Missouri Constitution.

necessary to defend himself or herself … from what he or she reasonably believes to be the use or imminent use of unlawful force by such other person ….” Section 563.031.1.[6] This general right to self-defense also permits a person to use deadly force if “he or she reasonably believes that such deadly force is necessary to protect himself, or herself or her unborn child, or another against death, serious physical injury, or any forcible felony.” Section 563.031.2(1).

Missouri law also recognizes what is commonly known as the castle doctrine, codified in section 563.031.2(2). Under the castle doctrine, a person need not face death, serious physical injury or any forcible felony to respond with deadly force. Section 563.031.2(2). Rather, Missouri’s castle doctrine provides that a person is justified in using deadly force “to defend himself or herself or a third person from what he or she reasonably believes to be the use or imminent use of unlawful force by such other person” and “[s]uch force is used against a person who unlawfully enters, remains after unlawfully entering, or attempts to unlawfully enter a dwelling, residence, or a vehicle lawfully occupied by such person.” Sections 563.031.1, 563.031.2(2).[7]

---

[6] All statutory references are to RSMo 2016.

[7] The castle doctrine as set out in section 563.031.2(2) incorporates the requirements of the general statutory right of self-defense in section 563.031.1 and requires a reasonable belief in the use of actual or imminent unlawful force by another to justify deadly force. *See State v. Clinch*, 335 S.W.3d 579, 586 (Mo. App. 2011) (opining that “to use deadly force under [section 563.031.2], the requirements of [section 563.031.1] must also be met; otherwise, deadly force is prohibited”); *see also State v. Whipple*, 501 S.W.3d 507, 514-15 (Mo. App. 2016) (finding “the lawful occupier of a dwelling, residence, or vehicle ..., or an owner or lessee of private property ... is entitled to use deadly force to repel an unlawful entry, but only if he meets the requirements of self-defense set out in section 563.031.1.”).

Straughter argues the circuit court erred by failing to instruct the jury on the castle doctrine.[8]  This Court agrees.  The circuit court was required to give the castle doctrine instruction if there was substantial evidence that: (1) Straughter reasonably believed physical force was necessary to defend herself from what she reasonably believed to be the imminent use of unlawful force by Randell; and (2) Randell unlawfully entered the vehicle.  Sections 563.031.1, 563.031.2(2).[9]

---

[8] The State contends Straughter failed to properly preserve for appellate review her instructional error claim.  Specifically, the State points to Straughter's fifth argument in her motion for new trial, which was titled, "Error in Rejecting Defense Proposed Instruction #15 Regarding Castle Doctrine."  Instruction number 15 was, in fact, the general self-defense instruction the circuit court submitted to the jury.  Throughout Straughter's motion for new trial, she referred to the castle doctrine instruction as instruction number 15.  Despite this error, Straughter's substantive argument focused solely on the castle doctrine instruction.  This Court finds, despite her mistake, Straughter properly preserved the issue for review.  Rule 78.07(a) instructs "Where definite objections or requests were made during the trial in accordance with Rule 78.09, including specific objections to instructions, a general statement in the motion of any allegations of error based thereon is sufficient."  The record establishes Straughter's counsel raised a definite request for the castle doctrine instruction; therefore, the general argument in the motion for new trial is sufficient to put the circuit court on notice of the basis for Straughter's objection.  For these reasons, the issue was properly preserved for appellate review.

[9] There also must be substantial evidence that Straughter lawfully occupied the vehicle.  Section 563.031.2(2).  During the trial, evidence established Ward loaned Straughter the use of his vehicle; and at the time of the shooting, Straughter was behind the wheel of Ward's vehicle with his permission and at his request.  Neither party disputes Straughter lawfully occupied the vehicle as required by section 563.031.2(2).

Straughter also may not be entitled to the castle doctrine instruction or any self-defense instruction if she was the initial aggressor.  See section 563.031(1).  The evidence presented, however, does not suggest Straughter was the initial aggressor.  At all times during the confrontation, Straughter remained in the vehicle, and no evidence indicates she acted aggressively until Randell struck her.  The State also does not contend Straughter was the initial aggressor.  In fact, the State did not object to the general self-defense instruction to which Straughter would not have been entitled if she was the initial aggressor.

6

Viewed in the light most favorable to submitting the castle doctrine instruction, substantial evidence existed for each of these elements. There was substantial evidence presented that Straughter reasonably believed force was necessary to defend herself from what she reasonably believed was the use or imminent use of unlawful force. Upon arriving at the house, Straughter observed Randell waving around a gun, threatening to shoot everyone if they did not leave. Randell punched Straughter through the open window and remained outside the vehicle door where Straughter was seated, posing imminent threat of violence. Moreover, Straughter saw Jenkins-Finnie running toward the vehicle with a gun. For all these reasons, Straughter provided substantial evidence that she reasonably believed force was necessary to defend against the imminent use of unlawful force.

The Court next looks to whether Randell unlawfully entered the vehicle. It is undisputed Randell's arm entered the vehicle through the open window when Randell struck Straughter. Once Randell's arm crossed the threshold of the open window to strike Straughter, this action constituted an unlawful entry into the vehicle. The State and dissenting opinion contend, however, Randell's arm was no longer unlawfully in the vehicle the exact moment Straughter used deadly force; therefore, the facts do not support giving the castle doctrine instruction pursuant to section 563.031.2(2).

Of course, the State and dissenting opinion are generally correct; an individual cannot rely on the castle doctrine to justify the use of deadly force if the unlawful entry and threat of unlawful force occur remotely in time or place from the use of that deadly force. The castle doctrine, pursuant to section 563.031.2(2), does not apply if the threat of unlawful force has subsided or the person is no longer unlawfully entering, attempting to

7

enter, or remaining in the property. In other words, the unlawful entry and threat of unlawful force must be simultaneous and ongoing to justify the use of deadly force under section 563.031.2(2). The use of deadly force, therefore, must coincide with the unlawful entry and threat of unlawful force, and deadly force is not justified at a time and place remote from the unlawful entry.[10]

Here, substantial evidence exists that the unlawful entry and threat of unlawful force coincided with Straughter's use of deadly force. On direct examination, Randell testified as follows:

> Q: And what was Ms. Straughter's response when you asked that question?
> A: When I asked her that question, her exact words was -- excuse my language -- bitch, I don't have to explain nothing to you.
> Q: Okay. And what did you do?
> A: I stepped to the side and punched her through the window.
> Q: And why did you do that?
> A: I -- to be honest, I thought that was a weird question, like -- or not -- a weird answer. Like, why -- in my head, why did you bring someone to they house at -- this morning, and you know he's angry, like why.
> Q: After you hit Ms. Straughter through the window, what did you do?
> A: I stood there. When I hit her through the window, I stood there. She went down, and she came up with a pistol. And by that time I was already shot before I could even move away from the door.
>
> . . . .

---

[10] The castle doctrine, which is set forth in the statutory section titled "use of force in defense of persons," does not justify the use of force in defense of property where no threat of unlawful force exists as the statute clearly contemplates more than mere trespass to justify the use of deadly force. Section 563.031.2(2) justifies using deadly force in response to an unlawful entry only when a person, lawfully occupying the specified property, reasonably believes force is "necessary to defend *himself or herself* . . . from what he or she reasonably believes to be the use or imminent use of unlawful force." Sections 563.031.1, 563.031.2 (emphasis added). Section 563.031.2(2), therefore, requires a reasonable belief that force is necessary to defend oneself from the use or imminent use of unlawful force as the unlawful entry is occurring to justify the use of deadly force.

A: I was shot at an angle because when I -- when punched her, I had to – I'm right-handed. So when I swung with my left, I had already turned at an angle to swing my left. So by the time she was moving down, after I punched her, she went down and came up, I was already in a slight angle because of the way I swung my arm.

Q: So were you stepping away from the vehicle –

A: I wasn't even that close on the vehicle when I swung.

Q: Were you touching the vehicle when you were shot?

A: No, sir. I didn't touch the vehicle until I got -- after I got shot. To catch my balance because at this point I'm – I'm falling

. . . .

Q: Okay. And where were you standing?

A: Literally at the crease of the panel where the door meets. So you shut the front door and you close the back door, there's a black panel that separates the door. So I'm standing in the angle, like facing just like this. Like more of an angle, because I had just swung like this.

Q: Okay. And were you actually touching the vehicle at that point?

A: I never touched the vehicle. I didn't touch the vehicle until after I got shot. And that's when I was losing balance.

On cross-examination, further testimony was adduced from Randell:

Q: Now when you struck Ms. Straughter, your hand had to actually enter the car; is that correct?

A: Yes, sir.

Q: So you didn't open the door, but your arm entered that vehicle.

A: My hand.

. . . .

Q: And you can stand up and you can demonstrate for the jury where you were standing. (The witness stepped down from the stand.)

A: I was standing this far.

Q: Okay. Were you touching the door?

A: I didn't touch the door until I got shot, after I got shot.

Q: Okay. And so let's pretend, for example, that -- I don't know, like this space right here is Ms. Straughter's front window. Where were you standing?

A: Right here. So this line, this line right here, this line would be the panel. This would be her window, this would be the back window. Right here. I'm standing right here. So when I reached in to slap her, she went back and she

9

shot. I had already got hit. And that's when I grabbed the door because I felt myself falling.

Q: Okay. You can have a seat.

Straughter then testified:

Q: And what does Ms. Randell do to you at that point?
A: She was coming over as I'm talking. And she hit me in the face.
Q: Did she even try to have a conversation with you at that point?
A: So I don't know what exactly she said. As I said, I was on the phone. I don't recall what she said to me.
Q: Did you even respond to her?
A: No, I did not.
Q: How hard would you say she hit you?
A: I can't chew on this side of my mouth.
Q: After you're hit by Ms. Randell, can you see where Ms. Finnie is?
A: She is running directly behind her with a gun in her hand.
Q: At that point, what's going through your head?
A: They about to kill me.
Q: Did you know that Nicholas had a gun in the car?
A: Yes. I did.
Q: And where does he keep it?
A: So before he jumped out the car, when we pulled onto the street, he threw it into the seat.
Q: And after you're hit and see Ms. Finnie with a gun, what do you do?
A: I just grabbed it and tried to get them to back off.
Q: Did you aim at anyone specifically?
A: No, I did not.
Q: Do you even remember how many times you pulled the trigger?
A: I heard it twice

On cross-examination, Straughter further testified:

Q: Okay. She made no attempt to open that car door, did she?
A: No, sir.
Q: She didn't try to reach in and grab you, did she?
A: No, sir.
Q: She didn't try to reach in and pull on the inside of the handle maybe?
A: There was no time, no, sir.
Q: She didn't try to unlock the door?
A: No, sir.
Q: And I'm talking about before she actually hit you.
A: No.

10

Q: Okay. She wasn't clawing at the door, clawing at you, trying to get into the car or anything like that.
A: No, sir.
Q: Okay. What about after she hit you? She didn't pull on the door handle, did she?
A: There was no time in between her hitting me.
Q: Because you shot her first; right?
A: Right.

Viewing this evidence in the light most favorable to the submission of the instruction, Straughter shot Randell simultaneously with Randell's unlawful entry into the vehicle. Randell testified she "was already shot" before she could move away from the door of the vehicle. To strike Straughter, Randell positioned herself near where the vehicle's front and back door met, and she did not move from that position before she was shot. In fact, Randell testified "when I reached in to slap her, she went back and she shot."[11]

The events resulting in Straughter firing the handgun occurred rapidly. As this Court recently observed in a similar case finding error in failing to instruct on self-defense,

> It is all well and good to analyze the evidence on a moment by moment basis and claim the ability to parse these two individuals' purposes and beliefs across each indivisible instant of time. Reality, however, is much different.

---

[11] The dissenting opinion attempts to discount this evidence and promotes facts that do not favor giving the castle doctrine instruction. While evidence may exist that does not support giving the instruction, the dissenting opinion fails to adhere to the proper standard of review by relying on such evidence and discounting the evidence favoring the instruction. *See Bruner*, 541 S.W.3d at 534 ("In determining whether the circuit court erred in refusing to submit an instruction on self-defense, the evidence is viewed in the light most favorable to the defendant."); *see also Westfall*, 75 S.W.3d at 280 ("If the evidence tends to establish the defendant's theory, or supports differing conclusions, the defendant is entitled to an instruction on it."). Viewing the facts "in the light most favorable" to submitting the instruction, sufficient evidence existed entitling Straughter to the castle doctrine instruction. *Bruner*, 541 S.W.3d at 534. Once properly instructed, the jury, not this Court, would then determine whether Straughter fired the gun simultaneously with Randell's unlawful entry or after Randell's entry was complete.

> This entire altercation … was both dangerous and dynamic and certainly it lasted far less time than it takes to recount here.

*State v. Whitaker*, 636 S.W.3d 569, 575 (Mo. banc 2022). Like in *Whitaker*, the altercation between Straughter and Randell was dynamic and certainly lasted less time than it takes to recount. Viewing the evidence in the light most favorable to Straughter, substantial evidence exists supporting her theory that she was justified in using deadly force because she reasonably believed force was necessary to defend herself from Randell's use of unlawful force while Randell was unlawfully entering the vehicle.[12]

Randell's punch through the window of the vehicle, therefore, entitles Straughter to the statutory privilege of the castle doctrine defense under section 563.031.2(2). While the jury may have ultimately concluded that Straughter acted unreasonably using force against Randell or that Straughter's use of deadly force was not simultaneous with Randell's unlawful entry, it was entitled to do so, and the circuit court's refusal to give a castle doctrine instruction on that basis was error. Because substantial evidence supported the elements necessary to apply the defense, the circuit court erred in failing to instruct the jury on the castle doctrine.

---

[12] To reach this conclusion, this Court is not suggesting the common law principal of curtilage applies to the area immediately surrounding a vehicle. *See State v. Edwards*, 36 S.W.3d 22, 26 (Mo. App. 2000) ("[T]he 'curtilage' of a person's home is generally defined under Missouri law as the enclosed space of ground and buildings immediately surrounding a dwelling house."). If Randell had never entered the vehicle or attempted to enter the vehicle, the castle doctrine would not apply. But as the dissenting opinion concedes, Straughter would be justified in using deadly force if such force was used at the same time Randell unlawfully entered the vehicle. Because the situation was dynamic and this Court must view the facts in the light most favorable to giving the instruction, there was substantial evidence that Straughter's use of deadly force and Randell's unlawful entry into the vehicle occurred simultaneously.

Lastly, this Court must consider whether the circuit court's denial of the castle doctrine instruction prejudiced Straughter. *Westfall*, 75 S.W.3d at 280. Although the circuit court gave an instruction on self-defense, the castle doctrine as provided by section 563.031.2(2) allows for the use of deadly force in much broader circumstances than the general self-defense instruction submitted to the jury. Under the general self-defense instruction given to the jury, Straughter was justified in using deadly force only if she reasonably believed she was protecting herself against death or serious physical injury. Section 563.031.2(1). Under the castle doctrine, however, Straughter did not need to face death or serious physical injury to respond with deadly force. Rather, as long as she met the other requirements set forth in section 563.031.2(2), Straughter needed only to reasonably believe force was necessary to defend against "the use or imminent use of unlawful force" by another. Therefore, a jury could find Straughter was entitled to use deadly force under the castle doctrine instruction and not the general self-defense instruction, creating a reasonable probability that erroneously excluding Straughter's requested castle doctrine instruction affected the outcome of her trial. *See State v. Forrest*, 183 S.W.3d 218, 224 (Mo. banc 2006) ("Trial court error is not prejudicial unless there is a reasonable probability that the trial court's error affected the outcome of the trial."). For these reasons, the exclusion of the proposed instruction prejudiced Straughter.

Straughter, or any criminal defendant, should not have to choose between two very different self-defense instructions if both instructions are substantially supported by the evidence. If a self-defense instruction is substantially supported by the evidence, the circuit court must give the instruction without regard to whether another self-defense instruction

13

has been given.  The Notes on Use from the Missouri Approved Instructions support this notion, instructing:

> [When] there is evidence supporting more than one claim of justifiable use of physical force, such as evidence supporting both self-defense and the use of deadly force by a person lawfully in a dwelling or vehicle . . . a separate numbered cross-reference paragraph for each instruction on the justifiable use of physical force will be included in the verdict director.

MAI-CR 4th 406.06, Notes on Use 4.  Straughter, therefore, was entitled to a castle doctrine instruction even if a general self-defense instruction was also given.  Because Straughter was likewise prejudiced, she is entitled to a new trial on all counts.[13]

### Conclusion

Because the circuit court erred in failing to instruct the jury on the castle doctrine and Straughter was thereby prejudiced, the circuit court's judgment is vacated, and the case is remanded.

_____
W. Brent Powell, Judge

Wilson, C.J., Russell, Breckenridge, Fischer
and Draper, JJ., concur;
Ransom, J., dissents in separate opinion filed.

---

[13] On remand, the circuit court shall consider the evidence as presented at any new trial and determine if substantial evidence supports giving the castle doctrine instruction, or any other self-defense instruction, for any of the counts submitted in a new trial consistent with this Court's opinion.

14



# SUPREME COURT OF MISSOURI
## en banc

STATE OF MISSOURI,                )
                                  )
           Respondent,      )
                                  )
v.                                )     No. SC99170
                                  )
ANDREA SHAUNTE STRAUGHTER,        )
                                  )
           Appellant.       )

## DISSENTING OPINION

I respectfully dissent. I disagree with the principal opinion's conclusion that substantial evidence existed to support giving the castle doctrine instruction. Like the court of appeals, and presumably the circuit court, I believe the record reflects that Markysha Randell had removed herself from the vehicle occupied by Andrea Straughter, concluding her entry before Straughter resorted to the use of deadly force.

The facts recounted across the principal opinion make two things abundantly clear. First, Randell entered the vehicle occupied by Straughter when she extended her arm through the vehicle's open window. Second, Randell withdrew her arm from the vehicle. The distance to which Randell withdrew herself from the vehicle is subject to uncertainty, but no testimony directly states or implies Randell's arm remained in the vehicle.

Randell testified she "stood there," although at an angle to the door. The circuit court received the benefit of a physical demonstration from Randell about her proximity to the vehicle. Shereka Jenkins-Finnie testified Randell was several feet from the vehicle. Straughter's testimony confirmed this. The State questioned, "You were in a car maybe three feet from her and you didn't notice that you shot her?" Straughter responded, "I was leaving in fear of my life. I did not look back." No testimony suggested Randell was attempting another entry.

Straughter requested the circuit court submit the castle doctrine instruction because "the State's witnesses and the defense witnesses establish an entry into the vehicle that was an unlawful force that was used against [her] while she was lawfully remaining in the vehicle."[1] The State responded:

> The victim in this case did, I guess, temporarily enter the vehicle by hitting the defendant in the face.
> However, the three requirements for that instruction require entry, unlawfully remaining or attempting to enter. Neither -- none of those elements have been satisfied here. There's been no evidence that she continued to attempt to enter. Her entry was completed after the hit happened. She was removed from the vehicle. And the testimony was, in fact, that she was about at least a foot away from the vehicle when shots happened. And so that instruction does not comport to the facts in this case.

The court rejected the instruction.

## Analysis

"The trial court has an obligation to submit a self-defense instruction if the issue is supported by the evidence, when viewed in the light most favorable to the defendant."

---

[1] Notably, the theory presented to the circuit court did not focus on the handgun discharging while the unlawful entry was ongoing.

*State v. Weems*, 840 S.W.2d 222, 226 (Mo. banc 1992). In viewing the evidence in the light most favorable to giving the instruction, this Court does not supply missing evidence or grant speculative inferences. *State v. Bruner*, 541 S.W.3d 529, 538 (Mo. banc 2018).

Section 563.031[2] would allow Straughter to use deadly force against Randell: (1) "when and to the extent … she reasonably believes such force to be necessary to defend … herself … from what … she reasonably believes to be the use or imminent use of unlawful force by such other person" and (2) if "[s]uch force is used against a person who unlawfully enters, remains after unlawfully entering, or attempts to unlawfully enter a dwelling, residence, or vehicle lawfully occupied by such person."

Viewed in the light most favorable to submitting the castle doctrine instruction, evidence in the record did not exist for the second element. The legislature permits deadly force to be used when a person "*unlawfully enters*, remains after *unlawfully entering*, or attempts to *unlawfully enter* a dwelling, residence, or vehicle lawfully occupied by such person," section 563.031.2(2) (emphasis added), provided, of course, the actor "reasonably believes such force to be necessary to defend himself or herself or a third person from what he or she reasonably believes to be the use or imminent use of unlawful force by such other person." Section 563.031.1. Perhaps by legislative oversight, the definition of "unlawfully enter" from section 563.011(9) is not particularly helpful here as it relies upon situations

_____

[2] All statutory references are to RSMo 2016.

3

involving "premises" or "private property." Both are statutorily defined and do not, by their plain language, encompass vehicles. *See* section 563.011(4), (6).[3]

Accepting that an unlawful entry occurred at some point in the interaction between Randell and Straughter, there is not substantial evidence—or any evidence—Randell's unlawful entry and threat of unlawful force coincided with Straughter's use of deadly force, as the principal opinion correctly notes must be the case to be entitled to the defense. At best, the principal opinion takes two snippets of Randell's testimony to suggest Straughter shot Randell simultaneous to Randell's unlawful entry. Randell testified she "was already shot" before she could move away from the door of the vehicle. She also testified that "when I reached in to slap her, she went back and she shot." The first statement does not show an ongoing entry; it shows she was standing next to the vehicle. The second

---

[3] "Unlawfully enter" is defined as follows: "a person unlawfully enters in or upon *premises* or *private property* when he or she enters such *premises* or *private property* and is not licensed or privileged to do so." Section 563.011(9) (emphasis added). "Premises" is defined as "includ[ing] any building, inhabitable structure and any real property." Section 563.011(4). "Private property" is defined as "any real property in this state that is privately owned or leased." Section 563.011(6).

A hypothetical from oral argument helps illustrate how a defendant may be entitled to an instruction on the castle doctrine in the context of a home but not in this case, despite similar circumstances, due to the definition of "unlawfully enter." Had this occurred at Straughter's home, i.e., had Randell knocked down the front door, hit Straughter, and then merely stood there, Randell would have remained after unlawfully entering because she still would be on the "premises" or "private property." This is so because the definition of "premises" and "private property" both encompass "any real property." Section 563.011(4), (6). The issue would then be whether Randell had a reasonable belief force was necessary to defend against what she believed to be the use or imminent use of unlawful force.

In the case at hand, the "entry" element was no longer satisfied. A vehicle is not surrounded by any buffer that is synonymous with private ownership, as would be the case with "real property" around a home.

4

statement, in the proper context, shows a sequence of events. Both statements show Randell was *near* the car and no more. Anything further requires a speculative inference.

The principal opinion emphasizes the need to view the reality of a dynamic situation. Here, there is no reason a discrete event cannot be identified in the chaotic timeline. Was Randell entering the vehicle in concert with Straughter's use of deadly force? The record demonstrates she was not. There is no evidence Randell was entering the vehicle after her single strike. She stood next to it. There was also apparently sufficient time, as Randell stood there, for Straughter to go down, come up with a gun, and see Jenkins-Finnie approach—all before the shot was fired. Without a scintilla of evidence the unlawful entry was ongoing, the circuit court properly denied the castle doctrine instruction.

## Conclusion

For these reasons, the circuit court properly rejected Straughter's castle doctrine instruction.

_____

Robin Ransom, Judge

5